CITY OF MALDEN & others[1] vs. APPELLATE TAX BOARD
& others.[2]

Suffolk.    March 5, 1975. — April 11, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Taxation,* Equalized valuation. *State Tax Commission.* *Constitutional Law,* Due process of law, Equal protection of laws, Political subdivisions. *Practice, Civil,* Parties.

Where the State Tax Commission, pursuant to G. L. c. 58, §§ 9 and 10A, established a "proposed equalized valuation" of taxable property within each city or town in the Commonwealth, which formed the basis for allocations of the county tax and certain State aid, but, pursuant to § 10B, the Appellate Tax Board reduced the Commission's determinations for several cities and towns, including a reduction for Boston of nearly fifty percent, the Commission had no power or duty under § 10C to recompute the valuations of those cities and towns which did not appeal to the Board [396-397]; the lack of such recomputation did not deny due process or the equal protection of the laws to such nonappealing municipalities [400].

The statutory scheme of G. L. c. 58, §§ 9-10C, providing that equalized property valuations for cities and towns proposed by the State Tax Commission become final, except as modified by the Appellate Tax Board, bears a rational relationship to the legislative object of equalizing valuations and does not deny substantive due process to cities and towns which did not appeal to the Board [400]; nor were their rights to procedural due process violated by not being parties to an appeal to the Board resulting in a

---

[1] Seven other cities, and officials and taxpayers of the plaintiff cities.

[2] The Commissioner of Corporations and Taxation, the State Tax Commission, the city of Boston, and officials thereof.

substantial reduction in the Boston valuation where the Commission, fairly and adequately representing the public interest before the Board, also represented their interests [401].

In a proceeding where appellant municipalities claimed that the Appellate Tax Board, in substantially reducing the equalized valuation of Boston under G. L. c. 58, § 10B, used a different valuation method for Boston than that used by the State Tax Commission, and the Commission then refused to equalize the valuations of the appellants with those of Boston, the appellants failed to establish that such conduct by the Commission was tainted by any purpose or design to discriminate necessary to make out a denial of the equal protection of the laws. [402-403]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 27, 1974.

The case was reported by *Hennessey, J.*

*Lewis H. Weinstein (Arthur G. Telegen, Loyd M. Starrett & Peter B. Ellis* with him) for the plaintiffs.

*Paul J. Burns,* Special Assistant Attorney General, for the Appellate Tax Board.

*Howard S. Whitehead,* Deputy Assistant Attorney General, for the State Tax Commission.

*Herbert P. Gleason,* Corporation Counsel (*Mack K. Greenberg,* Assistant Corporation Counsel, with him) for the city of Boston & others, interveners.

*David Lee Turner* for the city of Brockton & another, amici curiae, submitted a brief.

BRAUCHER, J. In 1974, pursuant to G. L. c. 58, §§ 9 and 10A, the State Tax Commission (commission) determined a "proposed equalized valuation" for each city and town in the Commonwealth. A number of cities and towns appealed their determinations to the Appellate Tax Board (board) under G. L. c. 58, § 10B, and the board reduced some of them. In particular, the equalized valuation established for Boston by the commission was reduced by the board from more than $4.6 billion to $2.6 billion. Some of the plaintiffs asked the commission to seek judicial review of the board's decision in the Boston case, but the commission declined. Some of the plaintiffs requested the commission not to file

a final report under G. L. c. 58, § 10C, until it recomputed, in light of the Boston decision, the equalized valuations for those cities and towns which did not appeal to the board. We hold that the commission correctly denied that it had the power or duty so to recompute valuations and therefore correctly refused to do so. We also hold that G. L. c. 58, § 10C, as construed, is not unconstitutional.

On December 27, 1974, some of the plaintiffs filed in the county court the original complaint against the board and the commission; others intervened later, as did the city of Boston and others as defendants. On December 31, 1974, a single justice of this court issued an order temporarily restraining the commission from reporting equalized valuations to the General Court under G. L. c. 58, § 10C; subsequently all parties stipulated to the facts and consented to continuance of the restraining order pending decision by this court. On January 8, 1975, an amended complaint was filed, seeking in the alternative either that the decision of the board in the Boston case be quashed or that the commission recompute the equalized valuations of those cities and towns which did not appeal to the board. On January 16, 1975, the plaintiffs filed a substitute complaint, seeking only the latter relief; and the single justice reported the case to this court without decision. On January 31, 1975, the board filed its findings of fact, report, and opinion in the Boston case. In argument at our March sitting the plaintiffs disclaimed any attack on the board's decision in the Boston case.

The plaintiffs contend that the board applied different standards of value from those applied by the commission to the cities and towns which did not appeal. Therefore, they argue, the commission must reconsider the valuation of the nonappealing cities and towns in order to establish valuations which are "equalized." Otherwise, they say, the statute violates the requirement of due process of law and denies the plaintiffs the equal protection of the laws.

1. *The board as a party.* As originally brought, this action sought, in the alternative, to correct errors in the proceedings of the board in the Boston case, and thus was in part a civil action in the nature of certiorari. G. L. c. 249, § 4. In such an action the board could be made a formal party as a method of seeking review of its order. *Kennedy* v. *District Court of Dukes County,* 356 Mass. 367, 379 (1969). But that aspect of the action has now been abandoned, and no controversy is now alleged between the plaintiffs and the board. The action should therefore be dismissed as to the board.

2. *Interpretation of the statutes.* Equalized valuations are the subject of G. L. c. 58, §§ 9-10C.[3] See *Sudbury* v. *Commissioner of Corps & Taxn.* 366 Mass. 558, 565-566 (1974). On or before April 1 of each even numbered year, the commission is to determine and establish a proposed equalized valuation for each city and town "which shall be the fair cash value of all property in such city or town subject to local taxation as of January first in such year." § 9. "All generally accepted methods for determining values of real and personal property, including a comparison of sales prices, capitalization of income and replacement cost less depreciation, shall be available to the commission." § 10. On or before April 20, the commission is to hold a public hearing on the proposed equalized valuations, giving two weeks' written notice to the assessors. The commission may change the proposed equalized valuation of any city or town, sending notice to the assessors within one week after the close of the hearing. § 10A. On or before June 1, a city or town aggrieved by the equalized valuation established for it by the commission may appeal to the board, which is to decide every such appeal not later than December 1. "The decision of the board shall be final." § 10B.

---

[3] St. 1966, c. 14, § 43, as amended by St. 1968, c. 256, § 1 (amending § 10), and St. 1974, c. 492, § 5 (amending § 10C).

The critical provision for present purposes is § 10C,[4] which requires the commission, on or before December 31, to establish "a final equalization and apportionment" and to report it to the General Court. This is to be done "on the basis of the equalized valuations determined" by the commission under §§ 9 and 10A, "as modified" by the board under § 10B. The "final equalization and apportionment" has four parts: (1) "the fair cash value of all property in the commonwealth subject to local taxation," (2) "the fair cash value of all such property in each city and town," (3) "the ratio which the fair cash value of all such property in each city and town bears to the fair cash value of all such property in the commonwealth," and (4) "the proportion of county tax, which should be assessed upon each city and town."

On April 5, 1974, the commission promulgated proposed equalized valuations under § 9 for 351 cities and towns. After the public hearing the commission reduced the valuation for nineteen cities and towns. The amount fixed for Boston was $4.6304 billion, and the total for all cities and towns was about $57 billion. Thirty-three cities and towns appealed to the board.

---

[4] "On or before December thirty-first in each year in which an equalization is to be established, the commission shall, on the basis of the equalized valuations determined under sections nine and ten A, as modified by the appellate tax board under section ten B, establish a final equalization and apportionment upon the several cities and towns as of January first in such year of the fair cash value of all property in the commonwealth subject to local taxation, the fair cash value of all such property in each city and town, the ratio which the fair cash value of all such property in each city and town bears to the fair cash value of all such property in the commonwealth, and the proportion of county tax, which should be assessed upon each city and town. The commission shall report its final equalization and apportionment to the general court, on or before December thirty-first. The equalized valuations and apportionments so established shall be the basis for all state, county, or district assessments, distributions, and appropriated grants and reimbursements which are based on equalized valuations and apportionments, in the next two year period and until another equalization and apportionment has been established."

Twelve of the cases, including those of three of the plaintiff cities, were settled at reduced valuations; six resulted in no change; and fifteen, including the Boston case, ended in reductions by the board.   The Boston decision, finding an equalized valuation of $2.6 billion, was rendered November 27, 1974.   The final report by the commission would have been filed by the statutory deadline of December 31 but for the restraining order.

We read § 10C, as does the commission, as requiring that the "final equalization and apportionment" make direct use, without revision, of the equalized valuations for each city and town established by the commission under §§ 9 and 10A, as modified by the board under § 10B.   What remains is ministerial: recomputation of the Statewide total, computation of the ratio of local to Statewide valuation for each city and town, and computation of proportions of county tax.   This is the plain meaning of the statutory text.   Introduction of a discretionary element at this stage would make nonsense of the statutory timetable, particularly the December 31 deadline.   Moreover, if Malden could demand revision of its valuation in light of the reduction of Boston's valuation, it would seem to follow that Boston could then seek revision in light of Malden's, and so on ad infinitum.

3. *Constitutional issues.* The plaintiffs claim that the equalization statutes, so construed, violate their rights under the Fourteenth Amendment to the Constitution of the United States and under arts. 10 and 11 of the Massachusetts Declaration of Rights.   They claim that the statutes deprive the taxpayers of nonappealing cities and towns of property without due process of law and deny them the equal protection of the laws.

The plaintiffs assert denial of both "substantive" and "procedural" due process.   The "substantive" claim is that the statutes bear no rational relation to the legislative object of equalizing valuations.   See *Commonwealth* v. *Henry's Drywall Co. Inc.* 366 Mass. 539, 543 (1974).   The record before us is wholly inadequate to call

for any extended discussion of possible legislative rationalizations. Cf. *Thompson* v. *Chelsea,* 358 Mass. 1, 6-9 (1970). We have had recent occasion to discuss difficulties and pitfalls in achieving the legislative object, and some of the available remedies. *Sudbury* v. *Commissioner of Corps & Taxn.* 366 Mass. 558, 566-567 (1974). But there is no suggestion that the object is improper, and our outline of the equalization statutes seems to us sufficiently to disclose their rational relation to that object. Certainly it is not irrational to provide that at some point the equalization process is to be completed.

The claim of denial of "procedural" due process is no more substantial. That claim is that the board's decision in the Boston case produced a material disadvantage to the plaintiffs, and that the plaintiffs were denied an opportunity to be heard in that case. The defendants respond that the plaintiffs could have appealed their own valuations to the board but did not, that they could have intervened in the Boston case but did not, and that they could have pursued their action in the nature of certiorari, seeking to quash the board's decision in the Boston case, but did not. We do not pass on any question relating to such remedies. We think it is sufficient that the commission represented the public interest, including the interests of the plaintiffs, before the board in the Boston case. There is nothing to show that the commission did not fairly and adequately represent the public interest. Cf. Mass. R. Civ. P. 23 (a) (4), 365 Mass. 767 (1974). There is no constitutional requirement that every city and town in the Commonwealth, much less every taxpayer, be made a party to every proceeding which may have some indirect financial impact on them. Cf. *Trustees of Tufts College* v. *Volpe Constr. Co. Inc.* 358 Mass. 331, 340 (1970); *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxn.* 363 Mass. 685, 689 (1973).

The plaintiffs' equal protection claim has more substance. There is authority indicating that distribution of State aid to municipalities on the basis of their assessed valuation would be a denial of equal protection if different municipalities assess property at widely different fractions of fair cash value. Cf. *Levy* v. *Parker,* 346 F. Supp. 897, 903 (E. D. La. 1972), affd. 411 U. S. 978 (1973). Parity of reasoning suggests that there might be a constitutional violation if the commission established equalized valuations at 100 % of fair cash value and the board decided that a proper equalized valuation for Boston alone was fifty per cent of fair cash value. In that event those aggrieved might be entitled to relief without waiting for correction of the error made as to Boston. Cf. *Iowa-Des Moines Natl. Bank* v. *Bennett,* 284 U. S. 239, 247 (1931).

Even in such a case, however, the conclusion would not be free from doubt. Taxpayers complaining of discriminatory assessments must show "intentional and arbitrary discrimination," and "mere errors of judgment by officials will not support a claim of discrimination. There must be something more — something which in effect amounts to an intentional violation of the essential principle of practical uniformity." *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 352-353 (1918). See *Charleston Fed. Sav. & Loan Assn.* v. *Alderson,* 324 U. S. 182, 190-191 (1945). Taxpayers "have normally prevailed on equal protection claims only when they were able to demonstrate a systematic pattern of discrimination." *Southland Mall, Inc.* v. *Garner,* 455 F. 2d 887, 889 (6th Cir. 1972). The same considerations may well have even greater force where the distribution of State aid is in dispute. Cf. *Stone* v. *Charlestown,* 114 Mass. 214, 224 (1873); *Cambridge* v. *Commissioner of Pub. Welfare,* 357 Mass. 183, 186 (1970).

The present case does not involve intentional and arbitrary discrimination by the express terms of a statute. Nor is it established that there was intentional and

arbitrary discrimination either by the board or by the commission. The claim is that the board used a different method for Boston from that used for other cities and towns by the commission, that the result was a significant reduction in the valuation for Boston, and that the commission then refused to equalize the valuations of the others with those of Boston. Compare *Raymond* v. *Chicago Union Traction Co.* 207 U. S. 20, 37 (1907), with *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 353 (1918). Like the Supreme Court in the latter case, "we are unable to conclude that the" commission "entertained or is chargeable with any purpose or design to discriminate. Its action is not incompatible with an honest effort in new and difficult circumstances to adopt valuations not relatively unjust or unequal. When" the plaintiffs "first challenged the values placed upon the property of others no adequate time remained for detailed consideration nor was there sufficient evidence before" it "to justify immediate and general revaluations." *Ibid.* No attack on the decision of the board is now before us.

4. *Disposition.* A judgment is to be entered in the county court dismissing the action as to the board and declaring (a) that the commission has no power or duty to revise the equalized valuations of other municipalities by reason of the board's decision in the Boston case, and (b) that the equalization statutes, so construed, do not violate the provisions of either the Massachusetts Constitution or the Constitution of the United States.

*So ordered.*