KENNETH KENISTON & others[1] *vs.* BOARD OF ASSESSORS OF BOSTON & others.[2]

Suffolk.    March 18, 1980. — June 19, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Taxation,* Real estate tax: assessment, abatement. *Boston. Statute,* Retroactive statute. *Constitutional Law,* Taxation, Equal protection of laws. *Due Process of Law,* Taxation.

As a temporary measure, St. 1979, c. 797, § 10, which limits the adjustment for disproportionate property tax assessments to the municipal average for all taxable property rather than to the average of the most favored class of property, does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution or the proportionality requirements embodied in Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth and art. 10 of the Declaration of Rights. [892-899]

The requirement in St. 1979, c. 797, § 10, that the figure representing the fair cash value of taxable property in a city or town be no greater than the equalized valuation figure from the preceding year as determined by the State Tax Commission pursuant to G. L. c. 58, §§ 9-10C, does not violate the due process requirements of the Federal or State Constitution. [899-903]

Since the provision of St. 1979, c. 797, § 24, which applied the limited remedy set forth in § 10 to all cases pending before the Appellate Tax Board on November 16, 1979, the effective date of the act, would retroactively and unconstitutionally penalize taxpayers for municipalities' long-standing disregard of proper assessment procedures, this court imposed on the statute a more circumscribed retroactivity limited to cases concerning taxes for fiscal year 1980. [903-906] WILKINS, J., with whom KAPLAN, J., joined, concurring.

[1] Richard H. Goldberg, John M. Hines, trustee, Rosalind Posner, and Northland Realty Corporation.

[2] City of Boston and the Appellate Tax Board. The Department of Revenue was dismissed as a party defendant, see *Executive Air Serv., Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, 357-358 (1961), and the complaint was amended to add the Appellate Tax Board.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 20, 1979.

The case was reported by *Quirico, J.*

*Evan Y. Semerjian (John J. Regan* with him) for the plaintiffs.

*Walter H. McLaughlin, Jr. (Walter H. McLaughlin, Sr.,* with him) for the Board of Assessors of Boston & another.

*James A. Aloisi, Jr.,* Assistant Attorney General *(Donald K. Stern,* Assistant Attorney General, with him) for the Appellate Tax Board.

HENNESSEY, C.J. This action, coming before us on reservation and report by a single justice of this court, attacks the constitutionality of that portion of §§ 10 and 24 of St. 1979, c. 797,[3] which limits the remedy available to a taxpayer whose property has been disproportionately assessed. The plaintiffs seek a declaratory judgment pursuant to G. L. c. 231A. Briefly stated, the plaintiffs, each of whom is a Boston real estate taxpayer, contend that the legislative judgment that disproportionate assessments should be corrected by adjustment only to the municipal average for all taxable property rather than to the average of the most favored class of property violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and the proportionality requirements embodied in Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth, and art. 10 of the Declaration of Rights; that the establishment of the equalized value determined pursuant to G. L. c. 58, §§ 9-10C, as a ceiling on the fair cash value of a municipality deprives the plaintiffs and other taxpayers of due process; and that the statute's retroactive application nullifies the vested rights of the plaintiffs and other taxpayers to proportional assessment at the level of the most favored class in violation of the Federal due process clause and the Massachusetts Constitution and discriminates irrationally among taxpayers of the same fiscal years in violation of the Federal equal protection clause.

---

[3] Statutes 1979, c. 797, § 10, is codified as G. L. c. 58A, § 14; § 24 is not codified.

For reasons discussed below, we conclude that the municipal average limitation on property tax abatements and its retroactive application, as limited to abatement proceedings for fiscal year 1980, evidence a constitutionally permissible legislative response to the potential erosion of municipal revenues mandated by the most favored class remedy of *Tregor* v. *Assessors of Boston*, 377 Mass. 602, cert. denied, 444 U.S. 841 (1979), and to a need for a more stable distribution of local property tax burdens pending Statewide revaluation of real property to full and fair cash value. We emphasize, however, that the temporary nature of the statutory remedy is an important factor in our consideration of constitutionality.[4] In accordance with our conclusion, we order entry of a judgment declaring that § 10 is constitutional and that § 24, as limited to abatement cases for fiscal years after 1979, is likewise constitutional.

The statutory sections challenged in this action were adopted as part of a comprehensive scheme of property valuation and classification, which represents the latest in a long series of dramatic developments in the area of property taxation in this Commonwealth. We need not recount here the widespread incidence of illegal assessments antedating the statute. Judicial efforts to enforce the long-standing statutory and constitutional requirements that all real property be assessed proportionately, Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution; G. L. cc. 58-59, as then in effect, are well documented in the opinions of this court. See, e.g., *Sudbury* v. *Commissioner of Corps. & Taxation*, 366 Mass. 558 (1974); *Shoppers' World, Inc.* v. *Assessors of Framingham*, 348 Mass. 366 (1965); *Bettigole* v. *Assessors of*

---

[4] As demonstrated in our discussion, *infra*, the plaintiffs do not establish unconstitutionality with regard to prospective application, but they clearly demonstrate detrimental and discriminatory aspects of the challenged sections. The statutory remedy terminates in 1983 by its own terms, St. 1979, c. 797, § 24, consistent with a reasonable time schedule for Statewide revaluation. If the life of the statutory scheme were to be extended beyond that time, it would be indicative of more of the same persisting unfair tax practices against which this court has spoken many times, and it would make a stronger case tending to prove unconstitutionality.

*Springfield*, 343 Mass. 223 (1961). However, amidst the accelerated judicial enforcement of the fair cash valuation requirement, see *Sudbury* v. *Commissioner of Corps. & Taxation, supra* at 569, there was public challenge to the concept of 100% valuation. This challenge culminated in the 1978 constitutional amendment which permits an apportionment of the real property tax burden among commercial, industrial, open space, and residential property owners through usage classification. Art. 112 of the Amendments to the Massachusetts Constitution. The Legislature's first response to the classification amendment, St. 1978, c. 580, was found to be constitutional in *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue*, 378 Mass. 657 (1979). That first classification scheme was replaced by the current system under St. 1979, c. 797.

Although enacted with the current classification plan, §§ 10 and 24 have no direct connection with classification. Rather, the contested aspects of the legislation pertain to an interim method of computing property tax abatements for property disproportionately assessed during years in which the classification plan is being implemented. Section 10[5]

---

[5] General Laws c. 58A, § 14, inserted by St. 1979, c. 797, § 10, provides: "In cases where the appellate tax board finds that a taxpayer is being assessed disproportionately with respect to other properties within the same city or town, the board shall compute the measure of damages in the following manner:

"(1) by computing an equalized tax rate by dividing the total taxes as assessed for that city or town for the year for which the finding was made by the fair cash value of the city or town, which shall in no event be higher than the equalized value as finally reported to the general court by the state tax commission pursuant to section ten C of chapter fifty-eight for that city or town in the year next preceding the year for which the finding was made.

"(2) by applying the rate as computed in accordance with subsection one to the fair cash value of the property and thereby determine the taxes which should have been paid.

"(3) by subtracting the amount of taxes which should have been paid from those actually paid or assessed.

"In such cases within a city or town that has been certified for classification by the commissioner under the provision of section fifty-six of chapter forty and has implemented such classification system the measure of damages shall be computed on the basis of the tax rate of the class in which the property has been assessed."

establishes, in effect, an abatement to the municipal average,[6] and thus produces a tax "approximating the tax that should have been imposed by lawful assessment practices." See *Tregor* v. *Assessors of Boston, supra* at 610. The abatement computation set forth in § 10 involves a three-step process. First, the Appellate Tax Board (board) computes an equalized tax rate by dividing the total taxes assessed for a particular municipality by the fair cash value of all taxable property of that municipality. The statute requires that the figure representing the fair cash value of the city or town be no greater than the equalized valuation figure from the preceding year as determined by the State Tax Commission[7] pursuant to G. L. c. 58, §§ 9-10C.[8] Second, the board applies the equalized tax rate to the fair cash value of the property for which an abatement is sought. This multiplication determines the amount of taxes which should have been paid. Third, the board subtracts the amount of taxes that should have been paid from those taxes which were actually paid or assessed to determine the amount of any abatement. Statutes 1979, c. 797, § 24, makes the challenged abatement procedure applicable "to all cases before the Appellate Tax Board" on November 16, 1979 (the effective date of c. 797), and to all other cases filed thereafter relative to assessments for the fiscal years ending on or before June 30, 1983.

1. As the defendants do not dispute the appropriateness of declaratory relief in the circumstances of this case, see *Sydney* v. *Commissioner of Corps. & Taxation*, 371 Mass.

---

[6] Applying the equalized tax rate to the. fair cash value of a particular parcel, as mandated by § 10, has the same effect as applying the actual tax rate to a percentage of the fair cash value which represents the municipal average.

[7] Although § 10 refers to the State Tax Commission, a 1978 amendment, St. 1978, c. 514, §§ 40-42, substituted Commissioner of Revenue for the State Tax Commission in G. L. c. 58, §§ 9-10C.

[8] Equalized valuations, see G. L. c. 58, §§ 9-10C, are primarily intended to provide a basis for the allocation of the county tax and certain State aid. They are designed to establish the fair cash value of the aggregates of taxable property within each municipality. See *Malden* v. *Appellate Tax Bd.*, 367 Mass. 395, 398-399 (1975).

289, 293-295 (1976), we turn first to the plaintiffs' contention that a taxpayer whose property is assessed at a disproportionately higher rate than other property in the same community has a constitutional right to an abatement to the average of the most favored class. In arguing that the General Court lacks the constitutional authority to impose an average class remedy, the plaintiffs rely on three sources: the equal protection clause of the United States Constitution; the proportionality provisions of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and art. 10 of the Declaration of Rights; and the decisions of this court. We discuss these potential sources of unconstitutionality seriatim.

When legislative enactments involving taxation have been challenged as violative of the equal protection clause of the Fourteenth Amendment, the Supreme Court has granted State Legislatures wide discretion. In upholding a Florida statute which granted a $500 property tax exemption to widows but not to widowers, the Court in *Kahn* v. *Shevin*, 416 U.S. 351, 355-356 (1974), stated: "We deal here with a state tax law reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden. We have long held that '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' *Lehnhausen* v. *Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 [1973]. A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. *Allied Stores [of Ohio, Inc.]* v. *Bowers*, 358 U.S. 522, 528 [1959]. This principle has weathered nearly a century of Supreme Court adjudication, and it applies here as well. The statute before us is well within those limits." This court has accorded similar latitude to legislative determinations in the field of taxation. See *Beals* v. *Commissioner of Corps. & Taxation*, 370

Mass. 781, 785 (1976); *Weinstock* v. *Hull*, 367 Mass. 66, 68-70, appeal dismissed for want of a substantial Federal question, 423 U.S. 805 (1975). The power of the Legislature to regulate taxpayer remedies is no more circumscribed than its power to enact substantive tax laws.

The plaintiffs direct our attention to the discrimination between and within various classes of property wrought by the historical discrepancies between assessments and fair cash value. See *Sudbury* v. *Commissioner of Corps. & Taxation*, 366 Mass. 558, 563 (1974). They contend that § 10 fails to alleviate this discrimination. In particular, the plaintiffs argue that the statute utterly destroys the abatement rights of disproportionately assessed taxpayers within the most favored class itself because the equalized ratio of assessed value to fair cash value, dictated, in effect, by § 10, will always be higher than the average ratio of the most favored class.

While it may be true that fewer taxpayers will receive abatements under the § 10 formula and that the abatements of those taxpayers who do qualify may be smaller under § 10 than under the most favored class remedy, we cannot agree that such results work a "hostile and oppressive discrimination." See *Lehnhausen* v. *Lake Shore Auto Parts Co.*, *supra* at 364, quoting from *Madden* v. *Kentucky*, 309 U.S. 83, 88 (1940). The abatement limitation has a rational basis in that a taxpayer is remitted only so much of his tax as exceeds what he should have paid had a municipality followed lawful assessment practices. See *Tregor* v. *Assessors of Boston*, 377 Mass. 602, and *id*. at 613, 615 (dissenting opinion), cert. denied, 444 U.S. 841 (1979). If under the § 10 formula a taxpayer, residential, commercial, industrial, or open space, pays no more than his fair share, see *Bade* v. *Drachman*, 4 Ariz. App. 55, 63-65 (1966); *Siegal* v. *Newark*, 38 N.J. 57, 62-64 (1962), he does not present a case of invidious discrimination. The equal protection clause imposes "no iron rule of equality." *Allied Stores of Ohio, Inc.* v. *Bowers*, 358 U.S. 522, 526 (1959). Moreover, the temporary nature of the § 10 remedy, by its own terms and

as defined by our construction of § 24, mitigates any residual discrimination. So long as § 10 is not extended beyond its 1983 termination date, it will further an orderly transition of Statewide revaluation and will not unduly compromise the integrity of the taxing process. The legislation does not purport to validate unconstitutional taxes or to affect any available remedy other than the abatement remedy. Thus, we conclude that the Legislature's distinguishing for abatement purposes between taxpayers who fall above the municipal average and taxpayers who fall below that average is not so "palpably arbitrary" as to offend the equal protection clause.[9] See *id.* at 530.

Secondly, the plaintiffs argue that § 10 violates the State Constitution's mandate that taxes be levied on a "proportional and reasonable" basis.[10] Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. Cf. Declaration of Rights, art. 10 (each individual is obliged to contribute only "his share" of tax burden). The rule of proportionality was designed so that "each tax-payer should be obliged to bear only such part of the general burden as the property owned by him bore to the whole sum to be raised." *Brookline* v. *County Comm'rs of the County of Norfolk*, 367 Mass. 345, 350 (1975), quoting from *Oliver* v. *Washington Mills*, 11 Allen 268, 275 (1865). The precise fractions which must be equivalent to satisfy the constitutional proportionality requirement were set forth in *Opinion of the Justices*, 220 Mass. 613, 621 (1915): "[A] tax is proportional, within the meaning of the Constitution, only when it bears the same ratio to the whole sum raised by taxation as the taxpayer's

---

[9] The plaintiffs' reliance on *Sioux City Bridge Co.* v. *Dakota County*, 260 U.S. 441, 446 (1923), to support their equal protection claim is misplaced. That case is factually inapposite and therefore cannot be construed to mandate a lowest class remedy for all cases. See *Tregor* v. *Assessors of Boston*, 377 Mass. 602, 613 (1979) (dissenting opinion).

[10] Section 10 must be judged apart from art. 112, the constitutional amendment authorizing the Legislature to classify property according to its use for the purposes of taxation, and its implementing statute, St. 1979, c. 797, § 11, which is applicable to revaluated communities in fiscal year 1981. St. 1979, c. 797, § 25.

taxable estate bears to the whole taxable estate of the Commonwealth." Placed in the context of municipal taxation, the formula would require the tax on property divided by the total taxes assessed to equal the fair cash value of the property divided by the total fair cash value of all property in the municipality. This formula corresponds exactly to that prescribed under § 10 for the computation of the tax which should have been paid: the equalized tax rate is determined "by dividing the total taxes as assessed for that city or town for the year for which the finding was made by the fair cash value of the city or town." The proper tax is then computed "by applying the [equalized] rate . . . to the fair cash value of the property."

Thus, contrary to the plaintiffs' claims, § 10 prescribes a remedy which complies in all respects with the constitutional concept of proportionality. Any residual discrimination between the favored and the disfavored taxpayer occasioned by the use of the municipal average remedy, see *Tregor* v. *Assessors of Boston, supra* at 610 (reduction to municipal average results in favoritism to other taxpayers assessed below that average), however distasteful, does not obligate the disfavored taxpayer to contribute more than "his share." Cf. *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue,* 378 Mass. 657, 663-666 (1979) (disparities in tax burdens inherent in piecemeal implementation of property tax classification acceptable); *Springfield* v. *Assessors of Granville,* 378 Mass. 159, 163 (1979) (principle of proportionality in taxation leaves room for Legislature to grant exemptions reasonably related to public interest). We have recognized that "practically it is impossible to secure exact equality or proportion in the imposition of taxes." *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 231 (1961), quoting from *Cheshire* v. *County Comm'rs of Berkshire,* 118 Mass. 386, 389 (1875). See *County of Essex* v. *Newburyport,* 254 Mass. 232, 236 (1926) ("[n]o tax system has been devised whereby a perfect equalization of its burdens" can be accomplished). Even as limited by § 10, the abatement remedy aims at the "equality by 'approximation'" that

the Constitution requires.[11]  See *Bettigole* v. *Assessors of Springfield, supra* at 231.

In light of the foregoing discussion, the plaintiffs' reliance on *Tregor* v. *Assessors of Boston, supra,* for the proposition that a disproportionately assessed taxpayer has a constitutional right to an abatement to the average of the most favored class is misplaced.  The plaintiffs nonetheless contend that after *Tregor* the substantive constitutional right to proportional taxation became so identified with the remedy for its violation that there is no right independent of the remedy.

It is beyond dispute that in *Tregor* we held that an aggrieved taxpayer is "entitled" to the most favored class remedy.  *Id.* at 611-612.  However, the plaintiffs overlook the fact that the *Tregor* majority scrupulously avoided grounding its most favored class remedy in the Constitution, State or Federal.  See *id.* at 613-614 (dissenting opinion).  Indeed, *Tregor* approved the granting of abatements to the municipal average in certain instances and noted that "a taxpayer makes out at least a prima facie case of disproportionate assessment if he shows that his property is assessed at a percentage of fair cash value greater than the average percentage." *Id.* at 609. Faced with a choice between a remedy which discriminated in favor of taxpayers assessed below the municipal average and a remedy which discriminated against taxpayers who failed to seek abatements, the court, in the absence of legislative guidance, chose the latter.  *Id.* at 610-611.

In balancing these alternative remedies, the *Tregor* majority relied on a view of proportionality that evolved from dictum in *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 377-378 n.10 (1965), which itself relied solely upon the Supreme Court decision of *Sioux City Bridge Co.* v. *Dakota County,* 260 U.S. 441 (1923).  Both *Shoppers' World* and *Sioux City Bridge* concerned a single tax-

---

[11] The plaintiffs' reliance on *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 231 (1961), to establish the proposition that a most favored class remedy is constitutionally required is unfounded.  That case involved declaratory and injunctive relief against an overt scheme of classification. The court never reached the issue of abatement levels.

payer whose property was assessed at a higher rate than substantially all other properties in the same community which were assessed uniformly at a lower percentage. Neither case involved the creation of abatement remedies for different classes of property of which one was the most favored. In *Shoppers' World* we held that a taxpayer whose property is singled out by an assessment higher than substantially all the community's other properties is entitled to an abatement "on a basis which reaches results as close as is practicable to those which would have followed application by the assessors of the proper statutory assessment principles." *Id.* at 377-378. This holding is constitutionally consistent with the abatement remedy of § 10, which effectively leaves the taxpayer in the same tax position he would have been in had his property been properly assessed. See *Tregor* v. *Assessors of Boston, supra* at 615 (dissenting opinion). The dictum in *Shoppers' World* to the effect that where "several different percentages of full, fair cash value were employed in valuing different classes of property, the principle [equal protection] discussed in the *Sioux City Bridge Co.* case would logically require" a most favored class remedy, *Shoppers' World, supra* at 377-378 n.10, was not necessary to the decision, see *Tregor* v. *Assessors of Boston, supra* at 613 & n.1 (dissenting opinion), and is not compelled by the equal protection principle. See equal protection discussion, *supra.*

In sum, we view the most favored class remedy of *Tregor* as a policy-based remedy, not a constitutionally mandated one. Although this court considered and rejected Boston's "doomsday" and "windfall" arguments, see *Tregor* v. *Assessors of Boston, supra* at 612, and *id.* at 613 (dissenting opinion), the Legislature was free to reconsider the impact of a most favored class remedy on the fiscal integrity of municipalities. See *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 433-434 (1977); *Beals* v. *Commissioner of Corps. & Taxation,* 370 Mass. 781, 785 (1976); *Assessors of Newton* v. *Pickwick Ltd.,* 351 Mass. 621, 625 (1967). The Legislature could reasonably conclude that a most favored class remedy

could precipitate a substantial erosion of municipal revenues and a rapid and harsh shift of tax burdens to residential property, such that the orderly transition to revaluation at full and fair cash value would be impeded. Thus, the Legislature's alteration of the *Tregor* remedy, so as to limit abatements during this transitional period, is rational in its operation and can be supported factually. Accordingly, the plaintiffs' argument that the most favored class remedy is inextricably tied to the constitutional right to proportional taxation must fall before the legislative judgment of how best to effect the public interest. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978).

2. We next examine the plaintiffs' contention that the statute's use of equalized valuations as a ceiling on the municipal fair cash value figures violates the due process clause of the Federal Constitution and parallel provisions of the Constitution of the Commonwealth. Section 10, it will be recalled, provides that the Appellate Tax Board shall compute the "measure of damages" of a disproportionately assessed taxpayer "by computing an equalized tax rate" equivalent to the ratio of total assessed taxes to total fair cash value of a city or town. The denominator of that ratio — the fair cash value of a city or town — "shall in no event be higher than the equalized value" of the city or town for the preceding two-year period as reported to the Legislature by the Commissioner of Revenue. See G. L. c. 58, § 10C. This language imposes a ceiling on the fair cash value of a city, which in effect may limit the level of abatements: the lower the fair cash value, the higher the ratio of assessed value to fair cash value and the less disproportion between any individual taxpayer's ratio and the municipal average ratio. The plaintiffs argue that this ceiling deprives taxpayers of due process because it establishes an irrebuttable presumption of fair cash value; because it renders a prior determination of equalized value binding on a taxpayer who was not a party to that determination and consequently was not given an opportunity to be heard; and because it

permits municipalities, but not taxpayers, to challenge the equalized value in an abatement proceeding. We reject the plaintiffs' various arguments.

The plaintiffs' irrebuttable presumption claim must fail under the reasoning of *Weinberger* v. *Salfi,* 422 U.S. 749 (1975). As we observed in *Rzeznik* v. *Chief of Police of Southampton,* 374 Mass. 475, 483 (1978); "[T]he Supreme Court, in *Weinberger* v. *Salfi* . . . made clear that, at least in the area of economic and social welfare, it would not apply the doctrine disfavoring irrebuttable presumptions as 'a virtual engine of destruction for countless legislative judgments . . . .' *Id.* at 772. See *Usery* v. *Turner Elkhorn Mining Co.,* 428 U.S. 1, 23 (1976). Thus, in upholding the validity of statutory requirements governing the eligibility for certain Social Security benefits, the Court declined to examine the stautory *classification* at issue to determine whether it was 'necessarily or universally true in fact,' *Vlandis* v. *Kline,* 412 U.S. 441, 452 (1973). Rather, the Court examined the statutory *procedures* to determine whether applicants for governmental benefits were able to present evidence that they met the challenged eligibility requirements. *Weinberger* v. *Salfi, supra* at 772. '[F]ailing in this effort,' the Court noted, '[the applicants'] only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test.' *Id.*" See *Rosary* v. *Commissioners of Pub. Welfare,* 370 Mass. 862 (1976).

As in *Weinberger,* the plaintiffs and other taxpayers are free to present evidence that they are assessed above the municipal average as defined and consequently meet the specified requirement for abatement. The plaintiffs nonetheless challenge equalized values as irrational and artificial figures, which have little to do with actual value. They point to *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558, 560 (1974), which recounts a master's finding that, with regard to 1974 figures at least, "there is no assurance that the final . . . equalized valuations approx-

imate full and fair cash values." In addition, they direct our attention to Boston's bond prospectus, in which the sale value of all taxable property within the city is estimated at substantially greater amounts than the city's equalized valuation.

Despite our acknowledgement of the difficulties in achieving equalized valuations, *Sudbury* v. *Commissioner of Corps. & Taxation, supra* at 566-567, we have upheld the equalization statutes and the conclusiveness of findings made under them notwithstanding their "indirect financial impact" on other taxpayers. *Malden* v. *Appellate Tax Bd.,* 367 Mass. 395, 400-403 (1975) (1974 equalization figures). Moreover, we have encouraged taxpayer reliance on equalized valuations in establishing a prima facie case of disproportionate assessment. *Tregor* v. *Assessors of Boston,* 377 Mass. 602, 609, cert. denied, 444 U.S. 841 (1979). Cf. G. L. c. 58A, § 12C, inserted by St. 1979, c. 383, § 3. Determination of equalized values, just as determination of § 10's "equalized tax rate" or municipal average percentage, requires proof of the fair cash value of all taxable property in a city or town. The inherent difficulty in determining the fair cash value of a municipality carries over into individual tax abatement cases, where the desirability of a consistent determination of that amount in cases involving taxpayers of the same community is readily apparent. In light of the foregoing, the Legislature could conclude that using, as a ceiling, the fair cash values of cities as established by a statutory process which had already been scrutinized and upheld, see *Malden* v. *Appellate Tax Bd., supra* at 400-403, constituted a reasonable method for determining the municipal averages for all taxable property. Accordingly, contrary to the plaintiffs' claim, the entitlement to an abatement is made available by the Legislature through § 10 upon compliance with an "objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives." *Rzeznik* v. *Chief of Police of Southampton, supra* at 484, quoting from *Weinberger* v. *Salfi, supra* at 772.

The plaintiffs next challenge what they denominate the "collateral estoppel effect" of the employment of equalized valuations pursuant to § 10. This argument, to the extent that it is not subsumed by the irrebuttable presumption claim, is foreclosed by *Malden* v. *Appellate Tax Bd.,* 367 Mass. 395, 401 (1975). That case concerned, in part, the city of Malden's desire to participate in Boston's equalized valuation appeal before the Appellate Tax Board. Any substantial change in Boston's equalized valuation could affect the distribution of State aid, and Malden argued that it had a constitutional right to participate in proceedings that might have an adverse impact on its share of revenues. The court, holding that Malden had no constitutional right to participate in the appeal, stated: "[I]t is sufficient that the commission represented the public interest, including the interests of the plaintiffs, before the board in the Boston case. There is nothing to show that the commission did not fairly and adequately represent the public interest. . . . There is no constitutional requirement that every city and town in the Commonwealth, much less every taxpayer, be made a party to every proceeding which may have some indirect financial impact on them." *Id.*

The case at bar parallels *Malden* in that statutory reliance on a prior determination of municipal fair cash value sets a ceiling on one of four factors which will influence the amount of tax abatement the plaintiffs and other taxpayers will receive. However, the most important issue in an abatement proceeding, the fair cash value of the taxpayer's property, is open to full adjudication before the Appellate Tax Board. We conclude therefore that the financial impact of the municipal fair cash value determination is as indirect in the tax abatement process as it is in the computation of the local aid formula. Consequently, any "collateral estoppel effect" occasioned by § 10's use of that determination is not unconstitutional.[12]

---

[12] We note that G. L. c. 58, § 10, as appearing in St. 1979, c. 797, § 8, now permits the Commissioner of Revenue to receive information from individual property owners prior to a determination of a community's equalized valuation.

The plaintiffs' final attack upon § 10 itself centers on the alleged ability of a community in a particular abatement proceeding to establish a municipal fair cash value lower than that determined under G. L. c. 58, §§ 9-10C, while the taxpayer is precluded from asserting a higher value. The plaintiffs' challenge is based on hypothetical circumstances that in all probability will never arise. Section 10 does not explicitly provide for an attack on the equalized valuation, and there is nothing in the record to indicate that the Appellate Tax Board will be receptive, in the plaintiffs' cases or those of other taxpayers, to any figure except the statutorily determined equalized valuation. Consequently, the plaintiffs' remote hypothesis falls far short of showing that the statute will be unconstitutionally applied to them. Cf. *Bunker Hill Distrib., Inc.* v. *District Attorney for the Suffolk Dist.*, 376 Mass. 142, 144-145 (1978).

3. In their final challenge, the plaintiffs assert that St. 1979, c. 797, § 24, is unconstitutional because it has the effect of applying § 10 both retroactively and in a discriminatory manner. Section 24 directs the Appellate Tax Board to apply the provisions of § 10 to "all cases before [it] upon the effective date of this act [November 16, 1979] and all other cases filed thereafter relative to assessments for the fiscal years ending on or before [June 30, 1983]." The plaintiffs argue that an application to pending cases retroactively abrogates their right to an abatement to the most favored class average, which allegedly vested as of the date the particular contested assessments were determined, in violation of the due process clause of the Federal Constitution and arts. 10, 11, 12 and 30 of the Declaration of Rights of the Massachusetts Constitution. The plaintiffs advance the additional argument that § 24 works an impermissible discrimination in that different remedial formulas will have been applied to taxpayers who have sought abatements for the same fiscal years solely on the basis of the timing of the final decisions of the Appellate Tax Board.

We think it clear that, in the circumstances of this case, § 24 does not comport with principles of due process. In ex-

amining the reasonableness of a retroactive statute, we have previously focused on a balancing of factors, including considerations of fairness, reliance on preexisting law, the extent of retroactivity, and the public interest to be served. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 192-194 (1978). Having considered these factors, we conclude that the public interest in a stable distribution of taxes cannot justify the inequity which would result from applying this statute to "all cases before the Appellate Tax Board" as of November 16, 1979. However, as discussed below, a more circumscribed retroactivity limited to cases concerning taxes for fiscal year 1980 can be countenanced without offending constitutional principles.

While it is true that not all retroactive tax legislation is "necessarily" unconstitutional, courts have nevertheless held that retroactive tax legislation constitutes a denial of due process when, in the light of "the nature of the tax and the circumstances in which it is laid," the law is "so harsh and oppressive as to transgress the constitutional limitation." E.g., *Welch* v. *Henry*, 305 U.S. 134, 146-147 (1938). The standard of oppressiveness is "usually a question of degree." *New York ex rel. Beck* v. *Graves*, 280 N.Y. 405, 409 (1939). The statute must not operate retroactively for "more than a reasonable period." *Merchants Nat'l Bank* v. *Merchants Nat'l Bank*, 318 Mass. 563, 571 (1945). The potential scope of § 24's retroactivity is readily discernible from the facts in the instant proceedings, which relate to assessments levied as far back as the 1976 fiscal year. We think that, in the circumstances of this case, the period of retroactivity reaches assessments levied so far back as to be oppressive and unjust under the due process clause. See *Lacidem Realty Corp.* v. *Graves*, 288 N.Y. 354, 357 (1942).

Although the statute legitimately seeks to avoid a drastic shift in real property tax burdens, its retroactive application to all pending proceedings would improperly penalize these plaintiffs and other taxpayers for municipalities' long-standing disregard of proper assessment procedures. See *Slewett & Farber* v. *Assessors of the County of Nassau*, 97 Misc. 2d

637, 649-652 (N.Y. Sup. Ct. 1978). The plaintiffs and other taxpayers presumably acted in reasonable reliance upon the previous state of the law. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, *supra* at 193-194; *Attorney Gen.* v. *Commissioner of Ins.*, 370 Mass. 791, 826 (1976). Beginning with *Shoppers' World, Inc.* v. *Assessors of Framingham*, 348 Mass. 366, 377 n.10 (1965), this court has strongly supported abatements at the level of the most favored class. See *Tregor* v. *Assessors of Boston*, 377 Mass. 602, cert. denied, 444 U.S. 841 (1979); *Assessors of Weymouth* v. *Curtis*, 375 Mass. 493 (1978). Taxpayers presumably have relied on this line of cases in pursuing their appeals, and their expectations with regard to fiscal years 1976 through 1979 should not be upset.

However, the limited measure of retroactivity necessary to apply § 10 to fiscal year 1980 [13] is not so oppressive as to be unconstitutional. In a great number of cases, it has been held that retroactive adjustment in taxes for the year in which a statute became effective is a reasonable exercise of legislative power. See, e.g., *Welch* v. *Henry*, 305 U.S. 134, 148-149 (1938); *Shanahan* v. *United States*, 447 F.2d 1082 (10th Cir. 1971); *Sidney* v. *Commissioner*, 273 F.2d 928 (2d Cir. 1960); *Gillmor* v. *Quinlivan*, 143 F. Supp. 440 (N.D. Ohio 1956). Thus, we can preserve the statute and conform to legislative intent by restricting § 24's applicability to fiscal years after 1979. See *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth*, 375 Mass. 85, 91-92 (1978); *Commonwealth* v. *Baird*, 355 Mass. 746, 755 (1969), cert. denied, 396 U.S. 1029 (1970); 2 C. Sands, Sutherland Statutory Construction § 44.18 (4th ed. 1973).

---

[13] Fiscal year 1980 began July 1, 1979, with taxes assessed as of January 1, 1979. Since the effective date of the statute was November 16, 1979, it is clear that some measure of retroactivity is involved if we are to apply § 10 to taxes for the 1980 fiscal year. Even if, as it appears, no cases concerning taxes for fiscal 1980 were "before" the board upon passage of §§ 10 and 24, there was taxpayer reliance in initiating abatement proceedings for 1980. Consequently, we do consider the retroactivity question with regard to abatements for fiscal year 1980.

Our conclusion as to the permissible due process limits of retroactivity accords with the equal protection principle as well. It is argued that equal protection requires that taxpayers with pending cases be treated in the same remedial manner as other taxpayers whose appeals for the same fiscal year have reached final decision. Were § 24 to apply § 10's remedial formula to all pending abatement proceedings, apparently some taxpayers would receive less favorable treatment than others merely because of the timing of the processing of their appeals. However, this problem does not arise with regard to 1980 cases since presumably none had reached the Appellate Tax Board before the passage of §§ 10 and 24. See note 13, *supra*.

4. All that we have said supports our conclusion that St. 1979, c. 797, § 10 (G. L. c. 58A, § 14), is constitutionally permissible legislation and that St. 1979, c. 797, § 24, as limited to abatement cases for fiscal years after 1979, is likewise constitutional. Judgment is to be entered in the county court accordingly.

*So ordered.*


WILKINS, J. (concurring, with whom Kaplan, J., joins). I agree with the result reached by the court and with the conclusions expressed in parts one and two of the opinion. As to part three, I agree that equal protection principles bar the application of § 24 to Boston taxpayers merely because their cases are pending for a particular year in the Appellate Tax Board, where the board has granted relief to other Boston taxpayers for the same tax year on the basis of the holding of the court in the *Tregor* case. In joining the opinion on the equal protection point, I assume that some Boston taxpayers have received such abatements for years prior to fiscal year 1980. I do not join in any expression in the opinion as to the application of § 24 to pending applications for prior fiscal years in other municipalities.

I reject, however, the suggestion that due process considerations bar the application of § 24 to years prior to fiscal

year 1980. There was no reasonable basis for taxpayer reliance on the dicta expressed by this court in opinions prior to the *Tregor* opinion. If all appeals from a municipality were to be treated the same for a given fiscal year, I would conclude that there was no denial of equal protection or of due process of law in applying § 24 to all appeals to the board for that municipality for that fiscal year.