388 Mass. 739                                        739

Board of Assessors of Danvers *v.* Tenneco, Inc., Tennessee Gas Pipeline Division.

BOARD OF ASSESSORS OF DANVERS *vs.* TENNECO, INC.,
TENNESSEE GAS PIPELINE DIVISION
(and two companion cases[1]).

Suffolk. January 5, 1983. — April 12, 1983.

Present: WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Taxation,* Real estate tax: abatement; Gas pipeline.

A gas pipeline company was not required to challenge the Commissioner
of Revenue's determination pursuant to G. L. c. 59, § 38A, of the fair
cash value of its pipeline in order to preserve its right to seek a tax
abatement from local assessors on the ground of disproportionality
between the assessment of the pipeline and the board's assessment of
other property in a town, and to appeal to the Appellate Tax Board
from the denial of the requested abatement. [740-742]

On appeals by a gas pipeline company from the denial by three municipal
boards of assessors of its applications for abatement of local tax
assessments on its pipeline, the Appellate Tax Board, in fulfilling its
duty to grant abatements of real estate tax to the municipal average,
properly relied on computations made by the Commissioner of
Revenue pursuant to G. L. c. 58, § 10C, establishing the ratio of
municipal assessed valuation to estimated full valuation in each town.
[742]

APPEALS from decisions by the Appellate Tax Board.

*Paul L. Kenny,* Town Counsel, for Board of Assessors of
Danvers & another.

*Henry J. Lane,* Town Counsel, for Board of Assessors of
Northbridge.

*J. Joseph Maloney* (*Martha M. Campbell* with him) for
Tenneco, Inc., Tennessee Gas Pipeline Division.

WILKINS, J. Tenneco, Inc., which owns a gas transmis-
sion line running through numerous cities and towns,

---

[1] Board of Assessors of Sudbury *vs.* Tenneco, Inc., Tennessee Gas
Pipeline Division, and Board of Assessors of Northbridge *vs.* Tenneco,
Inc., Tennessee Gas Pipeline Division.

sought abatements from January 1, 1979, local tax assessments on its pipeline in various municipalities, including the towns of Danvers, Sudbury, and Northbridge. The local assessors in various municipalities denied Tenneco's applications for abatement. Tenneco appealed to the Appellate Tax Board (board) challenging the assessments, in each instance, on the ground that the assessments were disproportionate in relation to the assessed valuation of other property. Tenneco claimed that the pipeline property was assessed at 100% of its fair cash value, while the other property in each municipality was assessed at a much lower percentage. The board agreed with Tenneco and ordered abatements.[2] Among the various municipalities, only Danvers, Sudbury, and Northbridge appealed to this court from the board's decision. We affirm the decision of the board in each case.

Under G. L. c. 59, § 38A, the Commissioner of Revenue (Commissioner) must annually determine and certify to the owner and to the appropriate board of assessors the valuation, as of January first of that year, of certain pipelines subject to taxation. On or before a stated date,[3] the pipeline owner and the appropriate board of assessors may appeal to the board from the Commissioner's determination. The local board of assessors is directed to assess every pipeline subject to § 38A "at the valuation certified by the commissioner." *Id.*

The appellant boards of assessors argue that, because Tenneco did not take a seasonable appeal under § 38A from the Commissioner's determination of value, Tenneco is barred from appealing to the board from local assessments made in the amounts certified by the Commissioner. They argue that the Commissioner's determination should reflect any disproportionate assessment practices in the applicable

---

[2] The amount of the abatement in the tax assessed in the three appellant towns was $14,027.25 in Sudbury; $5,828.60 in Danvers; and $873.19 in Northbridge.

[3] By St. 1981, c. 111, § 1, the date set forth in § 38A for the Commissioner's determination of value was changed from March 15 to May 15, and the date for timely appeal was changed from April 15 to June 15.

municipality. This argument fails on two grounds. First, the Commissioner would not be able to determine, in time to fulfil his statutory duty, whether and to what extent a municipality will engage in disproportionate assessment practices in the year for which he makes the pipeline valuation determination. Secondly, and more important, the statutory pattern calls for all assessments to be at 100% of fair cash value. The Legislature had the right to assume that assessors would comply with their statutory duty (G. L. c. 59, § 38) and oath (G. L. c. 41, § 29). The Commissioner must proceed on that assumption as well and is directed by G. L. c. 59, § 38A, to establish fair cash values. Hence, the Commissioner acted properly in determining the fair cash value of Tenneco's pipeline in each municipality, without taking into account the possibility that the assessors of a particular municipality might fail to adhere to the requirements of law.

We agree, therefore, with the board that, in order to preserve its right to appeal under G. L. c. 59, § 59, Tenneco was not obliged to challenge the Commissioner's determinations of fair cash value with which it did not disagree. We further agree with the board that, when the local assessors assessed the pipeline at 100% of its fair cash value and other property at substantially less than 100% of its fair cash value, Tenneco was entitled to seek an abatement from the local assessors and to appeal pursuant to G. L. c. 59, § 65, to the board from the denial of any requested abatement.[4] A denial of the right to challenge the disproportionate assessments would present a serious constitutional question because the Massachusetts Constitution requires that property be taxed proportionately. Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. *Tregor* v. *Assessors of Boston*, 377 Mass. 602, 604, cert. denied, 444 U.S. 841 (1979).

The assessors argue that, even if Tenneco was entitled to an abatement based on disproportionate assessments, Ten-

---

[4] The assessment ratios that the board determined were approximately 48% for Danvers, 61% for Sudbury, and 70% for Northbridge.

neco failed to present sufficient evidence to permit the board to make the necessary determination of Tenneco's measure of damages. Under G. L. c. 58A, § 14, inserted by St. 1979, c. 797, § 10, the board is directed to compute an equalized tax rate when it finds that a taxpayer is assessed disproportionately with respect to other properties within a municipality. See *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 890-891 (1980). Section 14 states that the equalized tax rate is to be computed by dividing the total taxes as assessed for a municipality for the appropriate year by the fair cash value of the municipality. This equalized tax rate is then to be applied to the fair cash value of the subject property to determine the taxes that should have been paid.

In this case, the board did not compute an equalized tax rate. Rather, it used ratios of assessed valuations to estimated full valuations computed by the Commissioner pursuant to G. L. c. 58, § 10C. The board, under G. L. c. 58A, § 12C, may admit these assessment ratios in evidence. In these cases, the board relied on the Commissioner's determination of an equalized tax rate for each town for the applicable fiscal year. The Commissioner's assessment ratios are made prima facie evidence of "the ratios at which property is assessed" in the appropriate municipality. G. L. c. 58A, § 12C, inserted by St. 1979, c. 383, § 3. We conclude, therefore, that the board was warranted in relying on the Commissioner's determinations pursuant to G. L. c. 58, § 10C, in fulfilling its duty under G. L. c. 58, § 14, to grant abatements to the municipal average.[5]

*Decisions of the Appellate
Tax Board affirmed.*

---

[5] We need not determine whether the board may rely on the Commissioner's determinations if those determinations are not introduced in evidence, or explicitly taken note of, in the course of the board's hearing. Here, the Commissioner's calculations of assessment ratios for all three towns were admitted in evidence. These calculations concerned January 1, 1978, values, and under G. L. c. 58A, § 12C, they are prima facie evidence for each following year until a new determination is made under G. L. c. 58, § 10C. We reject any suggestion that to prove its case a taxpayer alleging disproportionate assessments must prove, in addition to the Commissioner's calculation under G. L. c. 58A, § 12C, the fair cash value of all property in the particular municipality.