JOHN T. COAN, JR., & others vs. BOARD OF ASSESSORS
OF BEVERLY & another
(and a companion case).

Essex.     October 13, 1965. — October 21, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

Taxation, Real estate tax: assessment; Assessors. Constitutional Law, Taxation. Equity Jurisdiction, Taxable inhabitants' suit, Tax, Retention of suit for further relief. Equity Pleading and Practice, Bill, Decree, Suit for relief respecting assessment of taxes, Taxable inhabitants' suit.

The allegations of the bill in a certain taxable inhabitants' suit under G. L. c. 40, § 53, sufficiently showed an intentional, long continued, and unconstitutional practice of the assessors of a city in making disproportionate assessments of properties at widely varying percentages of fair cash value, and supported appropriate relief. [578]

In a taxable inhabitants' suit under G. L. c. 40, § 53, attacking an alleged illegal practice of the assessors of a city in making disproportionate assessments of properties at widely varying percentages of fair cash value, this court, upon deciding in October, 1965, that such practice had been shown, ordered the entry of a decree providing for a direction to the assessors to file in the trial court on or before a specified date in

January, 1966, a plan for a revaluation, to be effective January 1, 1967, of all the taxable properties in the city at full fair cash value, for incidental relief and action in, and powers of, the trial court, and for that court's retaining jurisdiction of the suit in order to supervise such revaluation until satisfactory completion thereof.   [578–579]

Two BILLS IN EQUITY filed in the Superior Court on May 14, 1965.

The suits were reported by *Bolster, J.*

The case was submitted on briefs.

*Lewis H. Weinstein, Laurence S. Fordham & Charles A. Goglia, Jr.,* for the plaintiffs.

*Carl V. Joslin,* City Solicitor, for the defendants.

BY THE COURT.   These bills, one for declaratory relief and the other initiated under G. L. c. 40, § 53, as a taxpayers' suit, have been brought against the board of assessors (board) and the collector of taxes of Beverly by twenty-one taxable inhabitants and real estate owners of that city.   The two cases have been consolidated.   The first bill, which closely resembles the other, alleges, upon information and belief, that for many years the board "has not assessed property at fair cash value" and that "in 1964 the average assessed valuation of real properties sold was approximately 34% of fair cash value, and ranged from less than 10% to more than 60% of fair cash value."[1]

The plaintiffs also allege (1) "that each of them has been, and will be in 1965 and subsequent years, unless the relief prayed for is granted, taxed . . . [in accordance with] assessed valuations which are at higher percentages of fair cash value than the average assessed valuation of all taxable real estate in the [c]ity, which is approximately 34% of fair cash value," and (2) that the board has "for many years . . . assessed taxable real estate . . . at less than its fair cash value, on a highly unequal and widely dispropor-

---

[1] The bill refers to 355 sales of real estate in 1964, as follows:

| Number of Properties | Ratio of Valuation to Sales Price |
|---|---|
| 38 | 20% or less |
| 68 | 21% to 25% |
| 106 | 26% to 30% |
| 61 | 31% to 35% |
| 38 | 36% to 40% |
| 34 | 41% or more. |

tionate basis, and in a manner discriminatory against many taxpayers, including the . . . [plaintiffs], and will, unless . . . relief . . . is granted, do so for 1965 and subsequent years."[2] The first bill, in addition to asking declaratory relief concerning the illegality of the alleged practices, seeks injunctive relief against their continuance. The second bill seeks injunctive relief against further proceedings under a scheme of raising money alleged to be illegal and invalid.

The defendants have appealed from interlocutory decrees overruling their demurrers. The bills have been taken pro confesso. The defendants have waived their answers and the cases have been reported upon the pleadings and proceedings already mentioned and upon motions for final decrees with attached proposed forms of decree. These proposed decrees would enjoin the defendants from all and any continuance of their allegedly illegal and discriminatory practices for the future, including the years 1965 and 1966, "provided, however, that [if] the . . . [defendants] shall present to the [c]ourt within thirty days from the date hereof a plan for revaluation of all taxable property in . . . Beverly on an orderly basis and with all deliberate speed to take effect January 1, 1967, and after notice to the . . . [plaintiffs] and a hearing thereon, the [c]ourt may, in its discretion, direct revaluation in accordance with such a plan, and suspend . . . [this] decree as to the years 1965 and 1966 and make the same effective January 1, 1967."

The relief now actually sought is thus less immediate and drastic than that sought in Leto v. Assessors of Wilming-

---

[2] Among the allegations are statements that "generally newer residential property is assessed at high[er] percentages of fair cash value than older residential property; that assessed valuations of residential property in one recent development of about 250 new houses . . . average about 38% and range from about 36% to about 42% of fair cash value; that another recent development of new houses . . . has assessed valuations of about 28–30% of fair cash value; and that studies of percentages of assessed valuation as compared with fair cash value based on sales in 1961, 1962 and 1963 produce essentially the same results as those hereinbefore set forth for sales in 1964." Such discriminatory conduct is alleged to have been engaged in "deliberately and intentionally, and not by . . . mistake" and to have been "for the purpose . . . of enabling certain taxpayers to escape payment of their due and just proportion of real estate taxes and for other illegal purposes, violative of the principle of uniformity of taxation, contrary to the [assessor's] oath."

*ton,* 348 Mass. 144. The allegations of the present bills are substantially less diffuse and confusing than those in the *Leto* case. Because the relief now sought will have no immediate effect on city finances and will cause only a gradual and orderly revaluation, many practical difficulties of a type mentioned in *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 236, and in the *Leto* case, 348 Mass. 144, 147, are much less likely to be encountered. The bills sufficiently allege disproportionate assessment practices long continued and likely to continue in plain violation of constitutional principles fully stated in *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, and referred to in the *Leto* case, 348 Mass. 144, 146–147. See *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 372.

We deal with the question of injunctive relief on the basis of the second bill which presents substantially every issue included in the first bill. In the second bill, the plaintiffs as taxpayers seek under G. L. c. 40, § 53, to vindicate the public interest against a proposed illegal scheme of raising money. Their standing to maintain the second bill is adequately averred and, under the *Bettigole* case, the other allegations are sufficient to be good against demurrer.[3]

A final decree is to be entered in the Superior Court in the first case declaring merely the well established general principle that it is the constitutional and statutory duty of the assessors in each year to make assessments at the full and fair cash values of each unit of taxable property, in accordance with the principles set forth or referred to in the *Bettigole* case. Any decrees granting injunctive relief in connection with the first bill are to be vacated.

The following relief shall be granted in the Superior

---

[3] In view of the *Bettigole* case, 343 Mass. 223, 235–236, 238, and *Leto* case, 348 Mass. 144, 146, 148–149, the plaintiffs, in the first bill, should have included more specific allegations of the basic facts concerning the several properties which they respectively own, sufficient to establish, if proved, that each plaintiff, with respect to some or all of his properties, was or would be the victim of discriminatory treatment. Such specific allegations would have been appropriate, if not essential, where injunctive relief was being sought for the benefit of the plaintiffs themselves in addition to declaratory relief. What was said in the *Leto* case (at pp. 148–149) concerning the necessity that such "plaintiffs show themselves to be directly, significantly and adversely affected" should not be taken as precluding relief under c. 40, § 53.

Court under the second bill:

(A) The assessors (with appropriate provision for the substitution as parties of any successors in office of any of the parties) shall be enjoined and directed to file in the Superior Court on or before January 14, 1966, a comprehensive plan for the revaluation at full and fair cash value (in compliance with applicable statutory and constitutional principles) of all taxable property in Beverly in an orderly manner and with all deliberate speed, such revaluation to take effect as of January 1, 1967.

(B) The decree shall make provision for proper notice of the filing of such plan to the plaintiffs and for a hearing upon the plan, if requested.

(C) The decree may grant further suitable relief upon such terms and conditions as it may deem appropriate, including provision for interim reports of progress in such revaluation, and for suitable filing in court of the final revaluation, and for notice of such filing a reasonable time before its effective date.

(D) All outstanding orders or injunctions restraining the defendants from proceeding with the assessment, billing, and collection of taxes in 1965 and 1966, shall be dissolved forthwith, subject to the issuance of such new and further orders or injunctions as from time to time may be appropriate to carry out the purposes of the decree.

(E) The Superior Court, in granting relief pursuant to paragraphs (A) to (D) inclusive above, shall retain jurisdiction of these proceedings until the satisfactory completion of the orderly revaluation mentioned in paragraphs (A) to (C), and, in such manner as from time to time may be appropriate, may supervise the same and may modify any of its outstanding decrees, injunctions, and orders, including the extension of the time for the performance of any of them, if the public interest and considerations of justice require such an extension. See *Briggs* v. *Merchants Natl. Bank,* 323 Mass. 261, 280; *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 566–567; *Chesarone* v. *Pinewood Builders, Inc.* 345 Mass. 236, 243.

*So ordered.*