STANLEY H. SYDNEY & another *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION & others.[1]

Suffolk.    September 15, 1976. — November 3, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Jurisdiction, Civil,* Declaratory relief, Administrative matter.    *Administrative Matter.    Taxation,* Real estate tax: assessment.

Dismissal of a complaint seeking declaratory relief with respect to the assessment of an urban redevelopment project for tax purposes was erroneous where it appeared that the judge did not exercise his discretion but grounded the dismissal solely on the theory that the failure of the plaintiffs to exhaust their administrative remedy through the Appellate Tax Board gave the defendants an automatic defense to the action. [292-295]

CIVIL ACTION commenced in the Superior Court on March 18, 1975.

The case was heard by *McNaught, J.,* on a motion to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

[1] The other parties to the action are named in the text.

*Myrna Putziger* for the plaintiffs.

*Howard Whitehead,* Assistant Attorney General, for the defendant.

KAPLAN, J.   After commencing the present action for a declaratory judgment by filing a complaint in the Superior Court, the plaintiffs moved for preliminary injunctive relief. On the defendants' suggestion at the hearing that the court lacked jurisdiction of the subject matter, the judge, acting under Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974),[2] entered judgment of dismissal. We took the case for direct review on our own initiative under G. L. c. 211A, § 10 (A). For the reasons given below, we reverse and remand the case to the Superior Court for a discretionary determination on a better record whether the action should be entertained or dismissed.

We summarize the plaintiffs' case as seen from the complaint. Named as plaintiffs are Stanley H. Sydney and Arthur M. Winn, sole partners of Sydney & Winn Salem Associates, a general partnership, which is one of two general partners of Pequot Associates, a limited partnership. The latter partnership is the owner and developer of a residential apartment project in the city of Salem approved as an urban redevelopment project under G. L. c. 121A. The defendants are the board of assessors of Salem, the city of Salem, and the Commissioner of Corporations and Taxation.

Under c. 121A, § 10 (first par.),[3] the project is exempted from property taxation for forty years, but the Commonwealth levies, instead, an annual excise of five per cent of the gross income of the project plus one per cent of the fair cash value of the real estate and improvements con-

_____

[2] Rule 12 (h) (3) provides: "Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[3] The references to § 10 and other sections of c. 121A were to those provisions prior to the important amendments of the chapter enacted in 1975.

stituting the project (with certain provisos). § 10 (third par.). However, if the Department of Community Affairs requests, the local assessors make a determination of the maximum fair cash value of the project as proposed, or of such values of any stages of the project, and their determinations then constitute the upper limits of value in the computation of the excise, except when it is shown that real estate or tangible personal property has been acquired which was not included in the project as proposed. § 10 (seventh par.; cf. fourth par.).

On July 12, 1972, the assessors determined under § 10 (seventh par.) that the maximum fair cash value of the land involved in the Pequot project was $300,000, and of the proposed improvements, $3,470,000. At the same time, pursuant to c. 121A, § 6A,[4] Pequot Associates entered into an agreement with the city of Salem to pay the city annually the excess of the respective following amounts over the excises payable pursuant to § 10: in each calendar year through the year in which building was completed, an amount determined by multiplying the real estate tax rate for such year by the fair cash value of the land, agreed to be $300,000; and in each subsequent calendar year (through the fortieth year in which the project is subject to c. 121A), an amount equal to fifteen per cent of the gross income of the project for the year (but not more than the real estate tax rate for such year multiplied by the maximum fair cash value of the project as fixed by the assessors). By later agreement of May 14, 1974, Pequot Associates agreed with the city of Salem to define the term "completion" in the agreement of July 12, 1972, as "issuance by Massachusetts Housing Finance Agency

---

[4] Section 6A, inserted by St. 1960, c. 652, § 5, provides in part: "Nothing in section ten shall prevent such contract [between the developer and the city or town for the carrying out of the project] from further providing for such corporation [or other developer under § 18C] to pay to the city or town with respect to one or more years such specific or ascertainable amount in addition to the excise prescribed by section ten as may have been stated in the application."

[MHFA] of its Certificate of Approval and Acceptance" for the project.[5]

The complaint sets out a document entitled "Certificate of Approval and Acceptance" signed for MHFA by its executive director, dated February 28, 1975, which states that, pursuant to a provision of a construction loan agreement of June 29, 1972, with Pequot Associates, MHFA "hereby approves and accepts the project as being satisfactorily completed."

On the same date, February 28, 1975, the assessors carried out their duty under § 10 (second par.) of certifying to the State Tax Commission and the taxpayer the value as of January 1 on which the excise was to be based; under the same statutory provision, the taxpayer might appeal the valuation to the Appellate Tax Board on or before April 1. The assessors certified "the fair cash value of property consisting of land and buildings" to be $5,770,000.

The plaintiffs allege that, for purposes of the excise, the project was not complete on January 1, 1975, and therefore the applicable excise should be figured on the fair cash value of the land as previously determined by the assessors ($300,000), not on the value of the whole project (which in all events should be the $3,770,000 previously determined by the assessors, plus only the value of additions, if there were any). For the proposition that the project was incomplete on January 1, 1975, the plaintiffs' pleading appears to rely on the MHFA's certificate with its February 28 date.

Concluding, the complaint, filed on March 18, 1975, alleges that a genuine controversy exists, and prays a declaration as just indicated with respect to the proper base for computing the 1975 excise; it seeks also interlocutory relief in the form of a preliminary injunction extending, for some period after March 15, 1975, the date for filing the excise return.

The slim record before us consists essentially of the com-

---

[5] The complaint sets out the words quoted in the text but does not reproduce the entire agreement.

plaint and the judgment of dismissal. In view of the judge's reference to a lack of subject matter jurisdiction, and in the absence of any statement of reasons indicating that he was exercising discretion, we are entitled to assume that the judge thought the plaintiffs were barred from a declaratory action simply because they had available to them the regular, designated route of attack through the Appellate Tax Board (with final appeal to this court, see G. L. c. 121A, § 10 [second par.], referring to G. L. c. 58A, § 13).[6] In other words, the decision is taken to rest on the theory that the failure of the plaintiffs to exhaust their administrative remedy gave the defendants an automatic defense to the action, and the appeal has been argued on this basis. (For present purposes we need not pursue the question whether such a defense, if it existed, should strictly be entitled lack of subject matter jurisdiction, which implies an absence of power or competence to hear and decide, or might rather be called by some other name.)[7]

Our decided cases do not accord with the judge's approach. We have held repeatedly, in the tax field,[8] that a declaratory action is not ousted merely by the fact that the taxpayer has an administrative path to relief. Rather we have taken the view that the judge in such a case may still exercise a discretion as to whether the action should be entertained. See *East Chop Tennis Club* v. *Massachu-*

---

[6] Compare § 3 of the declaratory judgment statute, G. L. c. 231A, inserted by St. 1945, c. 582, § 1, which provides that a judge may refuse to render a declaratory judgment where such judgment would not terminate the uncertainty or controversy "or for other sufficient reasons"; then "[t]he reasons . . . shall be stated in the record." This suggests that reasons must be assigned where a judge declines on discretionary grounds to entertain a declaratory action. See *Hogan* v. *Hogan*, 320 Mass. 658, 662-663 (1947).

[7] If such a defense existed but was not asserted and the action went to judgment on the merits, it may be doubted whether the judgment would be open to collateral attack. But cf. 5 C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 1350 (1969), and 1975 Pocket Part at 56 n.52.1.

[8] See *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 448-451 (1973), contrasting the approaches to the question in the tax and other fields.

*setts Comm'n Against Discrimination,* 364 Mass. 444, 449-450 (1973); *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756, 758 n.4 (1973); *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation,* 363 Mass. 685, 688 (1973) (involving an interpretation of G. L. c. 121A); *Massachusetts Ass'n of Tobacco Distribs.* v. *State Tax Comm'n,* 354 Mass. 85, 87-88 (1968); *Stow* v. *Commissioner of Corps. & Taxation,* 336 Mass. 337, 339 (1957); *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 443 (1957); *Madden* v. *State Tax Comm'n,* 333 Mass. 734, 735-737 (1956).[9] From these decisions no comprehensive formula emerges governing the exercise of discretion, but the following can be observed. Unless the administrative remedy is "seriously inadequate" under all the conditions of the case, it should not be displaced by an action for a declaration (see *Leto* v. *Assessors of Wilmington,* 348 Mass. 144, 149 [1964]), and care must be taken lest allowance of a judicial substitute disrupt unduly the orderly collection of tax. "Injunctions delaying the collection of the tax are not a necessary part of declaratory procedure and caution should be exercised in granting them." Qua, C.J., in *Meenes* v. *Goldberg,* 331 Mass. 688, 691 (1954).[10] Favor-

---

[9] Statute 1974, c. 630, §§ 1-3, respectively, amended §§ 2, 3, and 5, of G. L. c. 231A to allow declaratory actions to test the legality of certain administrative practices. The amendment of § 3 provides that failure to exhaust administrative relief before bringing such an action shall not bar it if an affidavit accompanying the complaint states that the particular practice is known to the agency and reliance on administrative relief would be futile. We think the latter provision about exhaustion is without bearing upon, and implies no legislative disapproval of, the limited discretionary use of declaratory judgments in the tax field, as described in our text.

[10] And, as noted in *Massachusetts Mut. Life Ins. Co., supra,* 363 Mass. at 688-689: "There is no requirement that the plaintiff elect between its administrative remedies and this bill for declaratory relief. A taxpayer should not be compelled at its peril to abandon any available administrative remedy in order to qualify for declaratory relief under G. L. c. 231A."

The present complaint was filed before the statutory date for the taxpayer's appeal of the assessors' valuation (see G. L. c. 121A, § 10 [second par.]). There is no indication whether such an appeal was filed, and no point has been made of this.

able to maintenance of a declaratory action, on the other hand, is the circumstance that the issue is important or novel or recurrent; that the decision will have public significance, affecting the interests of many besides the immediate litigants; or that the case reduces to an issue of law without dispute as to the facts. See *East Chop Tennis Club, supra* at 450; *Massachusetts Mut. Life Ins. Co., supra* at 688; *Stow, supra,* at 342; *Squantum Gardens, Inc., supra* at 443.[11]

As the question is one of discretion in light of the total controversy, it will often be unwise or unsafe to attempt to decide it on the basis of the complaint alone; thus the court said (in a pre-rules case), "Since the bill states a case within the declaratory judgment statute, it is proof against demurrer." *Carlton Hotel, Inc.* v. *Abrams,* 322 Mass. 201, 203 (1948). See *Stow, supra* at 342. Cf. *Nearis* v. *Gloucester,* 357 Mass. 203 (1970). And where a judge at the trial level has confined himself artificially to the pleading — has acted on the basis of words when he should have looked to the facts[12] — this court on appeal has characteristically remanded the case so that the story might be spelled out further to provide a better groundwork for the discretionary judgment. *Stow, supra* at 342. *Carlton Hotel, Inc., supra* at 203. *Hogan* v. *Hogan,* 320 Mass. 658, 663 (1947).

A remand is called for here so that the matters in dispute may be clearly discerned and discretion exercised more securely. The criteria mentioned above can hardly be applied until there is some indication of the grounds of defense.[13] Will the defendants, for example, assert that MHFA's certificate does not settle, for purposes of the excise, that the project was completed after January 1,

---

[11] As to problems of Federal declaratory relief, see *United States* v. *State Tax Comm'n,* 481 F.2d 963, 971-976 (1st Cir. 1973).

[12] Cf. *Olszewski* v. *Sardynski,* 316 Mass. 715, 717 (1944).

[13] Affidavits might be offered on the matter in lieu of or in addition to the pleading.

1975?[14] If such an assertion is made, what is its basis: Does it encompass anything of general or public interest beyond the bounds of the particular project? We need not multiply examples of the factors that could enter into a judgment by a trial judge as to the adequacy of the administrative remedy.

The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.[15]

*So ordered.*

---

[14] We do not intimate that such a contention can or will be made and express no opinion as to its cogency if made.

[15] The parties may wish to consider whether the other general partner of the limited partnership Pequot Associates should be added as a plaintiff by amendment of the complaint under Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974), and Reporters' Notes thereto, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 288-289 (1974). Cf. *Shapira v. Budish,* 275 Mass. 120, 126 (1931).