Lenk, J.
The plaintiff, Walter R. Leger (“Leger”), filed this civil action seeking declaratory and injunctive relief from a tax lien filed by the defendant, the Commissioner of Revenue (“the Commissioner”), against Leger’s residence for an unpaid sales tax assessment. In Count I, Leger seeks a declaration that the cost of labor in reupholstering furniture, a commercial activity in which he engages, is a service which is not subject to the sales tax under G.L c. 64, §§1 and 2. Leger seeks a declaration in Count II that the Commissioner’s filing of a tax lien without first providing Leger with an opportunity for a judicial hearing on the underlying tax liability violates due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article X of the Constitution ofMassachusetts. Leger has moved for partial summary judgment on Count II regarding his due process rights as guaranteed by the U.S. Constitution. The Commissioner has moved to dismiss Count I under Mass.R.Civ.P. 12(b)(1) for failure to exhaust administrative remedies. Regarding the claim for declaratory relief in Count II, the Commissioner has moved for partial judgment on the pleadings under Mass.R.Civ.P. 12(c), requesting a declaration that the Commissioner did not violate Leger’s due process rights. The Commissioner has also moved to dismiss the claim for injunctive relief for Count II under Mass.R.Civ.P. 12(b)(6).
BACKGROUND[1]
Between 1975 and October 1987, Leger did business as Office Chair Maintenance Company (“the Company”), a sole proprietorship that reupholsters worn office chairs brought in by customers.[2] Leger collected a sales tax from his customers for the cost of any materials used, but did not charge or collect sales tax on the cost of the labor.
After examining Leger’s books, the Audit Bureau (“the Audit Bureau”) of the Department of Revenue (“the Department”) determined that the Company should have collected sales tax on the labor charges and disallowed Leger’s deduction for his labor charges. On or about September 14, 1990, the Audit Bureau sent a Notice of Intention to Assess Sales and Use Tax to Walter R. Leger d/b/a Office Chair Maintenance Co. for the periods from January 1, 1985 through September 30, 1985 and July 1, 1987 through September 30, 1989. Leger waived his right to an office conference under G.L.c. 62, §26(b), but requested an administrative hearing before the Department’s Appeal and Review Bureau (“the Appeal Bureau”). The Appeal Bureau held a hearing on April 19, 1991 to consider Leger’s challenge to the proposed assessment contending that reupholstering is not “fabricating personal property” subject to sales tax under G.L.c. 64H, §§1 and 2 and instead is exempt as charges for personal services. In a letter dated April 24, 1992, the Appeal Bureau notified Leger that, in its opinion, reupholstering constitutes the taxable sale of tangible personal properly.
On May 11, 1992 the Commissioner made a deficiency assessment. A notice of assessment was mailed to Leger on June 23, 1992, a Demand was sent out on August 8, 1992, and a consolidated bill went out on September 1, 1992. The Department notified Leger by letter dated September 2, 1992 that the Department would commence collection proceedings against him if he failed to pay the tax assessment within ten days. The Department’s letter warned that the collection proceedings “can and will include the filing of tax liens against your property, levying your bank accounts and/or wages and seizures of your assets.” The Department filed a Notice ofMassachusetts Tax Lien (“lien Notice”) with the secretary of state under G.L.c. 62C, §50 on or about November 6, 1992.[3] The Commissioner also recorded notice of the lien in the Worcester Couniy Registry of Deeds. The lien is against Leger’s residence in Fitchburg.
In early September of 1992, Leger applied pursuant to G.L.c. 62C, §37 to the Commissioner for an abate *387 ment of the sales tax which had been assessed. The Commissioner denied Leger’s abatement request in two partial decisions, one issued on or prior to December 16, 1992, the other dated April 5,1993.[4] Leger filed appeals with the Appellate Tax Board pursuant to G.L.c. 62C, §39(c) on December 16, 1992 and May 10, 1993. Thus, at the time the Department filed the Lien Notices, Leger had had a hearing before the Department Appeal Bureau but had not had a determination of the Commissioner’s abatement decision, a hearing before the Appellate Tax Board or a judicial hearing. The lien has now been in place for over a year and a half but the Appellate Tax Board has yet to issue a decision.
DISCUSSION
I. Exhaustion of Administrative Remedies
Leger seeks a declaration from the Court that reupholstering does not constitute “fabricating personal property” for purposes of G.L.c. 64H, §1,[5] and is therefore not subject to sales tax under G.L.c. 64H, §2.[6] The Commissioner, in contrast, has moved to dismiss this claim under Mass.R.Civ.P. 12(10)(1) for failure to exhaust his administrative remedies as provided for by various Massachusetts General Laws. Leger has failed to show why this court should exercise jurisdiction over this matter before it is heard by the Appellate Tax Board.
Under Massachusetts law, the Commissioner may determine that a taxpayer owes additional tax above the amount shown on a tax return and make an assessment on that amount. G.L.c. 62C, §26(b). However, before an assessment can be made, the Commissioner must first give notice to the taxpayer of the proposed assessment. Id. The taxpayer then has 30 days to consult with the Department regarding the proposed assessment. Id.[7] At the time the Commissioner makes the deficiency assessment, a lien is automatically created. Id., §50(a). However, the lien is only valid against “any mortgagee, pledgee, purchaser or judgment creditor” after notice of the lien has been recorded with the Registry of Deeds in the case of real estate. Id., §50(b).
The taxpayer may contest a deficiency assessment by requesting that the Commissioner abate the assessment. Id., §37. The taxpayer may request a hearing on the abatement request. Id. If the Commissioner fails to grant the abatement, the taxpayer may then appeal to the Appellate Tax Board. Id. at §39. The taxpayer may appeal an adverse decision of the Appellate Tax Board to the Supreme Judicial Court. G.L.c. 58A, §13. In limited circumstances, a taxpayer may also seek declaratory relief, under G.L.c. 231A, from the Superior Court.
The statutory tax abatement procedures “are exclusive, absent exceptional circumstances.” D’Errico v. Board of Assessors of Woburn, 384 Mass. 301, 306 (1981). Exhaustion is generally required unless the administrative remedy is seriously inadequate, the issue at stake is important, novel, or recurrent, the decision has public significance affecting many taxpayers or the case is reduced purely to a question of law. Space Building Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992). This court has discretion to hear such claims, id., but doing so is generally disfavored. Ralph’s Wonder, Inc. v. Commissioner of Revenue, 19 Mass.App.Ct. 928, 929 (1984). See S.J. Groves & Sons Co. v. State Tax Commission, 372 Mass. 140, 143 (1977) (while Superior Court consideration of whether certain items purchased by a contractor were exempt from sales tax was acceptable, Supreme Judicial Court “would probably have left it to the Appellate Tax Board”).
In the case at bar, Leger’s claim does not involve exceptional circumstances that require this court to assert jurisdiction. Instead, Leger’s claim involves a technical tax issue as to which the Appellate Tax Board is “the preferred forum .. . because of its special expertise in tax matters.” DiStefano, 394 Mass. at 321. The plaintiff has an adequate remedy at law by pursuing his two abatement proceedings before the Appellate Tax Board. See Bettigole v. Assessors of Springfield, 343 Mass. 223, 235 (1961); Madden v. State Tax Commission, 333 Mass. 734, 736 (1956) (declaratory relief appropriate where no assessment had been made so that no administrative remedies were available). Thus, it would be inappropriate to order declaratory relief and Count I is, accordingly, dismissed.
II. Due Process
Leger contends that his due process rights, as guaranteed by the Fourteenth Amendment of the United States Constitution, prevent the Commissioner from placing a lien on his home without prior notice and an opportunity for him to be heard by a judge. Leger asserts that, absent exigent circumstances, the Commissioner cannot unilaterally place a lien on a taxpayer’s home without first proving to a judge that the taxpayer does in fact owe unpaid taxes and there is a realistic risk that the taxpayer will hide his assets. His argument relies heavily upon the recent United States Supreme Court decision. United States v. James Daniel Good Real Property, 114 S.Ct. 492 (1993). However, as discussed below, this case does not place new restrictions on the government’s ability to extract taxes from its citizenry.
The placing of a lien on an individual’s private residence does affect a property interest that is protected by the Fourteenth Amendment. Connecticut v. Doehr, 501 U.S. 1, 11-12 (1991); Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Like an attachment, a lien affects significant property interests. It clouds title, impairs the ability to sell or otherwise alienate the property, taints any credit rating, reduces the chance of obtaining a home equity loan or additional mortgage and may place an existing mortgage in technical default if there is an insecurity clause. Id. at 2113. Given that the government is infringing upon a protected property interest, the crucial question becomes what process is due the taxpayer. Mathews, 424 U.S. at 332-33. The general rule is that individuals must receive notice and a hearing prior to government *388 deprivation of their property. James Daniel Good Real Property, 114 S.Ct. at 500. Exceptions to this rule are tolerated only in “extraordinary situations where some valid government interest is at stake that justifies postponing the hearing until after the event.” Id. at 501, quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971).
However, the Supreme Court has consistently determined that the collection of taxes by summary process, with judicial review only afforded after the assessment, does not violate due process.[8] McKesson v. Division of Alcohol Beverages & Tobacco, 496 U.S. 18, 37 (1990); G.M. Leasing Corporation v. United States, 429 U.S. 338, 352 n. 18 (1977); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974); Phillips v. Commissioner, 283 U.S. 589, 599 (1931). The government’s interest in collecting taxes is so “exceedingly strong” that a state need not provide predeprivation process, even in the absence of exigent circumstances. McKesson, 496 U.S. at 37. The policy underlying this rule is the fear that allowing taxpayers to litigate their tax liabilities prior to payment “might threaten a government’s financial security,” by creating “unpredictable interim revenue shortfalls” and making the “ultimate collection of validly imposed taxes more difficult.” Id. See also G.M. Leasing Corporation, 429 U.S. at 352 n. 18 (“[T]he very existence of government depends upon the prompt collection of revenues”).
The plaintiff points to one section of the Good decision which he interprets as calling this traditional rule into question. See Good, 114 S.Ct. at 504-05. The Good decision concerned a federal civil forfeiture statute pursuant to which the government effected the ex parte seizure of a convicted drug felon’s home. Id. at 449. The Supreme Court held that, absent exigent circumstances, the due process clause requires the government to provide the home owner with notice and a hearing prior to seizure of his home. Id. at 505. In its analysis, the Court rejected the government’s contention that ex parte forfeitures were, like tax seizures, justified as a means of collecting revenue. Id. The Court’s historical discussion of ex parte tax seizures is, however, merely dicta and cannot be viewed in the expansive manner which Leger urges. The Supreme Court specifically noted that it reached its holding “without revisiting these [old tax] cases.” Id. at 504. The dicta in Good simply cannot be fairly construed as impliedly reversing a rule of law which the Supreme Court itself affirmed as recently as 1990. McKesson Corporation, 496 U.S. at 37 (“[I]t is well established that a State need not provide predeprivation process for the exaction of taxes”).
For similar reasons, Leger’s claim under Article 10 of the Declaration of Rights of the Massachusetts Constitution also fails. It is well established that the due process provisions of the Massachusetts Constitution provide protection comparable to that of the Fourteenth Amendment. Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270 (1992); School Committee of Hatfield v. Board of Education, 372 Mass. 513, 515 n. 2 (1977) (‘The protection afforded property interests by both provisions is subject to the same analysis”). The Court has rejected arguments similar to those now proffered by Leger, albeit made under the Fourteenth Amendment and not Article 10. The Court has “repeatedly held that, to sustain the orderly functioning of government and safeguard the integrity of the public purse, tax officials may assess and collect taxes before vouchsafing the taxpayer a right to hearing and judicial review as to the legality of the assessment.” Haverhill Manor, Inc. v. Commissioner of Public Welfare, 368 Mass. 15, 25 (1975), citing Old Colony Railroad Co. v. Assessors of Boston, 309 Mass. 439, 446 (1941).
ORDER
It is hereby ORDERED that the plaintiffs motion for partial summary judgment is DENIED, and the defendant’s motion for partial judgment on the pleadings and motion to dismiss is ALLOWED.

 As both parties have filed affidavits in support of their motions, the court will treat them as motions for summary judgment. This section contains the material undisputed facts.

 The Court will not consider certain of Leger’s allegations regarding a non-party corporation, Office Chair Maintenance, Inc., which was the sole proprietorship’s successor in interest. As that corporation is presently in Chapter 7 bankruptcy proceedings, its claims may only be asserted by its bankruptcy trustee. See 11 U.S.C. §§541, 704.

 The parties dispute whether or not notice was given to Leger. Leger contends that he first learned of the lien on December 11, 1992 when his application for an equity line of credit was denied because of the lien’s existence. In the context of this decision, this is not a material fact.

 The date of the first denial is unclear from the pleadings. However, it likely preceded December 16, 1992, the date when Leger filed his appeal with the Appellate Tax Board.

 Section 1 of G.L.c. 64H includes within the definition of a “sale” or “selling” transaction that is subject to the sales tax “[t]he . . . fabricating ... of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the . . . fabricating . . .”

 Section 2 of G.L.c. 64H provides in relevant part: “an excise is hereby imposed upon sales at retail in the commonwealth, by any vendor, of tangible personal property or of services performed in the commonwealth at the rate of five percent. . .”

 There are certain statutory exceptions which are not relevant here.

 While the Commissioner may be legally correct in arguing that Leger has received all the constitutionally required process due him, it is clear the post-deprivation relief he has been afforded leaves much to be desired. There is evidence before the court that the Appellate Tax Board has a significant backlog which is only increasing with time. Leger himself filed his first appeal over a year and a half ago, prior to or on December 16, 1992 and a second one over a year ago, on April 5, 1993. The Appellate Tax Board has not acted on such appeals. Leger’s palpable frustration with this regrettable delay is quite understandable.