DIGITAL EQUIPMENT CORPORATION *vs.* COMMISSIONER OF
REVENUE.

Suffolk. March 7, 1990. - July 12, 1990.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Taxation*, Corporate excise. *Statute*, Retroactive statute. *Constitutional
Law*, Taxation.

The procedure established by G. L. c. 23B, § 15 (*g*), for judicial review of
    determinations by the urban job incentive bureau respecting taxpayers'
    eligibility for job incentive deductions from corporate excise tax, did not
    preclude the Commissioner of Revenue from redetermining a taxpayer's
    eligibility by means of the audit process. [23-24]
A corporate excise taxpayer was entitled to the full job incentive deduc-
    tions claimed for the years 1980 through 1982 in the case of employees
    who were certified by the urban job incentive bureau (UJIB) and domi-
    ciled in municipalities designated on the applicable UJIB list as con-
    taining "eligible sections of substantial poverty," and was entitled to job
    incentive deductions not exceeding $5,000 for each employee who was
    certified by UJIB and who was domiciled in a "contiguous" municipal-
    ity under G. L. c. 23B, § 11, and had not moved prior to the tax years
    at issue. [24-25]
In the case of a manufacturing corporation claiming investment tax credits
    for the years 1975 through 1982 with respect to computers it had con-
    structed for its own use in Massachusetts, the Commissioner of Reve-
    nue incorrectly disallowed the credits to the extent he deemed them
    attributable to computer components that the taxpayer had purchased
    from its subsidiaries. [25-28]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*John S. Brown* for the taxpayer.

*Douglas H. Wilkins*, Assistant Attorney General, for the
Commissioner of Revenue

LYNCH, J. Digital Equipment Corporation (Digital) appeals from a decision of the Appellate Tax Board (board) denying applications for abatement for the tax years 1975 through 1982 and upholding determinations made by the Commissioner of Revenue (commissioner) in auditing Digital's corporate excise tax returns. The commissioner disallowed a portion of the investment tax credits claimed by Digital for all of the years at issue and a portion of the job incentive deductions claimed by Digital for the years 1980 through 1982.[1] We transferred the case to this court on our own motion. We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

1. *Job incentive deductions.* In 1970, the Legislature enacted an incentive program to encourage the creation of jobs in impoverished sections of the Commonwealth. St. 1970, c. 848. The program, as originally enacted, provided corporations with a tax deduction equal to twenty-five per cent of the wages paid to certain employees working at "eligible business facilities." G. L. c. 63, § 38F, inserted by St. 1970, c. 848, § 2.[2] The deduction, which the Legislature scaled back in 1984, St. 1983, c. 719, § 2, is in addition to the regular deduction allowed for wages paid to employees.

At the same time the Legislature also created the urban job incentive bureau (UJIB), and assigned to it the task of

---

[1] We note at the outset that Digital makes no claim that the audits at issue were conducted after the periods for assessment under G. L. c. 62C, § 26 (*b*) (1988 ed.), had expired. Digital consented to extend the periods of assessment for audits which might otherwise have been untimely.

[2] General Laws c. 63, § 38F, inserted by St. 1970, c. 848, § 2, provides: "In determining the net income subject to tax under this chapter, a domestic or foreign business corporation may deduct, in addition to any other allowable deduction under this chapter, an amount equal to twenty-five per cent of the compensation paid during the taxable year to individuals domiciled in an eligible section of substantial poverty, as defined in section eleven of chapter twenty-three B, and employed in an eligible business facility, as so defined, provided such corporation has a certificate of eligibility with respect to such facility for the taxable year issued by the urban job incentive bureau of the department of commerce and development."

administering the program.[3] In order to claim job incentive deductions for a given year, a corporation must obtain a "certificate of eligibility" for that year from UJIB. If UJIB determines that a certificate should be issued for a given facility in a given year, UJIB is required to issue the certificate and to designate on it the number of jobs that the facility creates or retains in an eligible area. G. L. c. 23B, § 15 (d) (1988 ed.). UJIB is also required to transmit a copy of the certificate to the commissioner. G. L. c. 23B, § 15 (e) (1988 ed.).

In order to qualify for the deduction, a business facility must, in addition to meeting certain other requirements, be "located in a city or town containing one or more eligible sections of substantial poverty or located in a city or town contiguous thereto." G. L. c. 23B, § 11 (c) (1988 ed.).[4] Under G. L. c. 63, § 38F, as originally enacted, deductions are available for "individuals domicled in an eligible section of substantial poverty . . . and employed in an eligible business facility."

Despite this statutory language, UJIB interpreted the governing statutes as providing that the areas from which corporations could hire eligible employees were the same as the areas in which eligible facilities could be located. During the tax years at issue, UJIB interpreted the statutes as not only allowing that eligible facilities could be located in "contigu-

---

[3]During the years in question, UJIB was a division of the Department of Commerce and Development. It is now a division of the office of business development. G. L. c. 23B, § 11 (e) (1988 ed.).

[4]General Laws c. 23B, § 11 (c), provides in pertinent part: " 'Eligible business facility', a place of business of a corporation subject to excise imposed under sections thirty to fifty-one, inclusive, of chapter sixty-three or a place of business located in a commercial center revitalization district which place of business is located in a city or town containing one or more eligible sections of substantial poverty or located in a city or town contiguous thereto and for which a certificate of eligibility has been issued by the urban job incentive bureau in the Massachusetts office of business development. A facility for which such a certificate is issued shall be deemed an eligible business facility only during the taxable year or as of the taxable status date to which such certificate relates, as provided in this chapter."

ous" municipalities, but also as allowing that eligible employees could reside in "contiguous" municipalities.

In the instructions disseminated by UJIB to taxpayers, UJIB described in identical terms both the places in which eligible facilities could be located and the places in which employees could reside to be eligible for the job incentive deduction — "eligible urban areas." UJIB used the same phrase — "eligible urban areas" — to identify the employees whose names and addresses were to be listed on the application for a certificate issued by UJIB.

Beginning in 1979, Digital attached to its corporate excise tax return a schedule I-1 for each of its eligible facilities. The schedule instructed the taxpayer Digital to "enter" on its return the "[n]umber of eligible employees listed on Certificate of Eligible Business Facility" issued by UJIB. The taxpayer was then to "enter" the "[w]ages paid to employees listed on Certificate of Eligible Business Facility" and a deduction equal to twenty-five per cent of that amount was allowed.

After conducting an audit, the commissioner disallowed a substantial portion of Digital's job incentive deductions for the years 1980 through 1982 and assessed a deficiency totalling $5,535,226. The commissioner disallowed the deductions in their entirety in the case of employees residing in communities that had been designated "contiguous" municipalities on the applicable UJIB list.[5] For the remaining employees the commissioner disallowed Digital's deductions to the extent that the deductions for any single employee in any one year exceeded $5,000.

The commissioner's complete disallowance of the deductions for employees residing in "contiguous" communities reflected his interpretation of the governing statute's eligibility

[5]Although UJIB took the position that the areas from which corporations could hire eligible employees were the same as the areas in which eligible facilities could be located, a publication of the Department of Commerce and Development, of which UJIB was then a branch, see note 3, *supra*, did distinguish between municipalities containing eligible poverty areas and "contiguous" municipalities.

rules, as they were originally enacted. In response to the conflicting interpretations of the statute by UJIB and the commissioner, the Attorney General issued an opinion concluding that an eligible business facility must create jobs for employees "drawn from the eligible section of substantial poverty itself." Rep. A.G., Pub. Doc. No. 12, 110, 114 (Mar. 23, 1983).

The commissioner's imposition of the $5,000 cap per individual deduction was based on St. 1983, c. 719, § 2, an amendment to G. L. c. 63, § 38F, approved on January 10, 1984, shortly after the Attorney General issued his opinion.[6] The amendment provided in part that "[n]o deduction under this section shall exceed five thousand dollars for any qualifying individual." That limitation, according to its terms, applied to tax years commencing on or after January 1, 1978. St. 1983, c. 719, § 3.

In addition to the cap, the amended § 38F also contained a grandfather clause allowing a job incentive deduction in the case of any individual domiciled in an eligible section of substantial poverty or "domiciled in an area which has been certified as such an eligible section of substantial poverty when the corporation first received a certificate of eligibility; provided, however, such individuals still live in the same city or

---

[6]General Laws c. 63, § 38F, as appearing in St. 1983, c. 719, § 2, provides: "In determining the net income subject to tax under this chapter, a domestic or foreign corporation may deduct, in addition to any other allowable deduction under this chapter, an amount equal to twenty-five per cent of the compensation paid during the taxable year to individuals employed in an eligible business facility, as defined in section eleven of chapter twenty-three B, and either:

"(i) domiciled in an eligible section of substantial poverty as defined in section eleven of chapter twenty-three B; or

"(ii) domiciled in an area which had been certified as such an eligible section of substantial poverty when the corporation first received a certificate of eligibility; provided, however, such individuals still live in the same city or town;

"and provided further such corporation has a certificate of eligibility with respect to such facility for the taxable year issued by the urban jobs incentive bureau of the Massachusetts office of business development. No deduction under this section shall exceed five thousand dollars for any qualifying individual."

town." G. L. c. 63, § 38F (*ii*).[7] Thus, the amendment, in addition to imposing the cap, preserves deductions based on UJIB certifications that were contrary to the Attorney General's interpretation of the statute. This protection attaches, to the extent that deductions do not exceed $5,000, so long as the employees continue to live in the same municipality.

A threshold issue in this case is whether the commissioner has the authority to reverse UJIB determinations concerning job incentive deductions by means of the audit process. Digital contends that the commissioner has no authority to make de novo determinations of the eligibility of employees certified by UJIB as eligible for job incentive deductions. In support of this contention Digital cites G. L. c. 23B, § 15 (*g*), which provides that UJIB determinations concerning certificates of eligibility shall be reviewed under the provisions of the State Administrative Procedure Act, G. L. c. 30A (1988 ed.). Digital claims that the commissioner is limited to a c. 30A challenge to UJIB certifications and cannot subsequently attack UJIB's determination of eligibility by means of the audit process.

While it seems clear that the procedure for review established by G. L. c. 23B, § 15 (*g*), was designed for use by taxpayers, it is not evident that it was intended to limit the ordinary powers of the commissioner. The amendment to § 38F, however, recognizes the conflict between UJIB and the commissioner and thus tacitly accepts the power of the commissioner to challenge the taxpayer's deductions by way of the audit procedure. We conclude, therefore, that the Legislature did not intend to limit the powers of the commissioner by permitting UJIB decisions regarding eligibility to

---

[7]Although this clause literally refers to *areas* certified by UJIB, UJIB technically certified only facilities and individuals. UJIB "certified" areas only indirectly, by certifying individual employees domiciled in given areas. We interpret the clause to mean that an employee remains eligible for the deduction so long as he continues to live in the same municipality where he lived when he was initially certified as eligible. The requirement that the employee "still" live in the same municipality confirms that the reference is in fact to UJIB's prior certification of the employee.

be challenged only in accordance with the provisions of G. L. c. 30A.

Turning then to the substance of the commissioner's determinations, we conclude that the commissioner was incorrect in disallowing job incentive deductions for employees who were domiciled in communities designated as "contiguous" municipalities on the applicable UJIB list and who had not moved prior to the tax year at issue. General Laws c. 63, § 38F, as amended, clearly preserves against challenge those deductions attributable to such employees.

However, the commissioner could properly disallow those job incentive deductions attributable to employees who did not meet the requirements of the grandfather clause. For example, employees in this category would include those who were originally domiciled in the municipality containing a section of substantial poverty, but later moved to a "contiguous" municipality, or those who were originally domiciled in one "contiguous" municipality, but later moved to another "contiguous" municipality. Deductions for such employees were not contemplated by the original job incentive legislation, see Rep. A.G., Pub. Doc. No. 12, at 114, and St. 1983, c. 719, § 2, did not shelter such deductions against challenge by the commissioner.

With regard to the $5,000 cap on individual deductions, we must distinguish between its application to deductions for employees domiciled in municipalities containing eligible poverty sections and its application to deductions for employees who were domiciled in "contiguous" municipalities who meet the requirements of the grandfather clause of the amended § 38F. Application of the cap to deductions of the first type, i.e., those deductions that were mandated by the original job incentive legislation, raises serious constitutional questions. While the Legislature was, of course, free to amend the legislation and impose such a cap prospectively, retroactive application of the limitation raises serious questions under the due process clause of the Federal Constitution and under parallel provisions of the Constitution of the Commonwealth. See *Keniston* v. *Assessors of Boston*, 380

Mass. 888, 903-906 (1980). "While it is true that not all ret-roactive tax legislation is 'necessarily' unconstitutional," such retroactive legislation is likely to be oppressive because "tax-payers presumably acted in reliance upon the previous state of the law." *Id.* at 904, 905. We therefore follow the ap-proach of *Keniston* and limit the retroactive application of the cap to taxes for the year during which the cap was en-acted. *Id.* at 905. The cap cannot be applied retroactively to limit Digital's deductions for employees domiciled in munici-palities containing eligible poverty sections.

There is no element of impermissible retroactivity, how-ever, in applying the cap to the deductions for employees who were domiciled in "contiguous" municipalities and met the requirements of the grandfather clause of the amended § 38F. Consistent with the 1983 opinion of the Attorney General, we conclude that the original job incentive legisla-tion did not provide a deduction for employees domiciled in "contiguous" municipalities. Therefore, when the Legislature enacted the grandfather clause, it was establishing a new cat-egory of employees who were eligible for the deduction. The Legislature was free to impose a cap on the size of individual deductions arising under this new category. The imposition of the $5,000 cap, as it applied these deductions, was not retroactive.

2. *Investment tax credits.* During the tax years at issue, G. L. c. 63, § 31A (*a*), inserted by St. 1970, c. 634, § 2, allowed manufacturing corporations to claim as a tax credit three per cent of the cost of "qualifying tangible property acquired, constructed, reconstructed, or erected during the taxable year," and used by them in the Commonwealth. The statute defines "qualifying tangible property," as "tangible personal property and other tangible property including buildings and structural components of buildings which are depreciable and acquired by purchase, as defined under sec-

tion one hundred and seventy-nine (d) of the Federal Internal Revenue Code."[8]

For the years 1975 through 1982, Digital filed corporate excise tax returns on which it claimed investment tax credits for computers it had constructed for its own use in Massachusetts. For each of the years the commissioner disallowed the credits to the extent that he deemed them attributable to component parts Digital had purchased from its subsidiary, Digital Equipment de Puerto Rico. For the years 1980 to 1982, the commissioner similarly disallowed credits attributable to component parts purchased from subsidiaries organized in Switzerland, Canada, and Taiwan. The combined disallowances resulted in assessments for aggregate additional taxes of $1,565,941.

The board upheld the commissioner's disallowance of Digital's tax credits on the basis of its determination that the "purchase" requirement of § 31A applies not only to "other tangible property including buildings and structural components of buildings," but also to "tangible personal property," such as the computers. Disallowance of the credits followed from this determination because § 179(d)(2) of the Internal Revenue Code (I.R.C.) excludes from the term "purchase" property acquired from affiliates.

We disagree with the board's conclusion that the "purchase" requirement of § 31A applies to tangible personal property. One strong indication that the clause "which

---

[8]General Laws c. 63, § 31A (*a*), inserted by St. 1970, c. 634, § 2, provides: "A manufacturing corporation, or a business corporation engaged primarily in research and development, which has been deemed to be such under section thirty-eight C or forty-two B, or a corporation primarily engaged in agriculture or commercial fishing, shall be allowed a credit hereinafter provided against its excise due under this chapter. The amount of such credit shall be one per cent of the cost or other basis for federal income tax purposes of qualifying tangible property acquired, constructed, reconstructed, or erected during the taxable year. Qualifying property shall be tangible personal property and other tangible property including buildings and structural components of buildings which are depreciable and acquired by purchase, as defined under section one hundred and seventy-nine (d) of the Federal Internal Revenue Code, as amended and in effect for the taxable year."

are depreciable and acquired by purchase" was not meant to apply to tangible personal property used in business is that such property is almost inevitably depreciable, because it has a limited useful life. It is only in the case of real estate, which may include both depreciable and nondepreciable elements, that depreciability becomes an issue.

In addition, the board's application of the purchase requirement to both categories of qualifying tangible property appears inconsistent with the allowance of a credit for qualifying property "acquired, constructed, reconstructed or erected during the taxable year." An interpretation requiring that all qualifying property be purchased seems to exclude the possibility of qualifying property that is constructed, reconstructed, or erected.

The commissioner addressed this difficulty by asserting that constructed property may be qualifying property so long as the taxpayer constructs it from purchased parts. It was in accordance with this approach that the commissioner disallowed the credits only to the extent that they were attributable to the parts acquired from the affiliates and therefore not "purchased" within the meaning of I.R.C. § 179(d).

The flaw in this approach, however, is that G. L. c. 63, § 31A, does not authorize the commissioner to distinguish between items of constructed property and their various component parts. Moreover, any attempt by the commissioner to make such a distinction is likely to produce anomalous results. In this case, for example, there would be no dispute about the tax credits claimed if Digital had acquired the parts in question from unrelated foreign competitors. We do not perceive that the Legislature's intent was to induce corporations located in Massachusetts to use only property produced by unrelated corporations in constructing productive equipment.

We are guided by the principle that "legislative intent is to be ascertained from the statute as a whole, giving to every section, clause and word such force and effect as are reasonably practical to the end that, as far as possible, the statute will constitute a consistent and harmonious whole, capable of

producing a rational result consonant with common sense and sound judgment." *State Tax Comm'n* v. *LaTouraine Coffee Co.*, 361 Mass. 773, 778 (1972), quoting *Haines* v. *Town Manager of Mansfield*, 320 Mass. 140, 142 (1946). Following this principle we hold that Digital was entitled to the investment tax credits it claimed under G. L. c. 63, § 31A.

3. *Conclusion.* We conclude that Digital was entitled to the full job incentive deductions it claimed in the case of employees who were certified by UJIB and domiciled in municipalities designated on the applicable UJIB list as containing eligible sections of substantial poverty. In addition, we rule that Digital was entitled to job incentive deductions not exceeding $5,000 for employees who were certified by UJIB and who were domiciled in "contiguous" municipalities and had not moved prior to the tax years at issue. We also rule that Digital was entitled to the full investment tax credits that it claimed. We remand for further proceedings consistent with this opinion.

*So ordered.*